THE LEHIGH VALLEY RAILROAD COMPANY and THE MORRIS CANAL AND BANKING COMPANY

*v.*

HENRY MCFARLAN and others.

1. A complainant cannot make one case by his bill, and another by his proofs, and still have a decree.

2. Title by adverse user rests upon the presumption of an actual grant which has been lost.

3. To raise the presumption of a grant where title to an easement is asserted, it must be shown that the use has extended over a period of twenty years, and has been for that period continuous and peaceable.

4. Proof of acquiescence by the owner of the servient lands, in the exercise of the adverse right, is indispensable in proving title to an easement by adverse user.

5. Where the user has been exercised by force, or by permission, or in the face of protests and in defiance of resistance, a grant cannot be presumed.

6. Resistance by words is sufficient to prevent the presumption of a grant of an easement.

On final hearing, on bill, answers and proofs.

*Mr. Alfred Mills* and *Mr. Thomas N. McCarter*, for complainants.

*Mr. Henry C. Pitney*, for defendants.

Lehigh Valley R. R. Co. v. McFarlan.

THE VICE-CHANCELLOR.

This is an injunction bill. The complainants seek to have the defendants perpetually restrained from interfering with a dam on the Rockaway river, at Dover, in the county of Morris. The Morris canal crosses the Rockaway river, at Dover, and is so built that the river, at that point, forms part of the canal. A short distance below the point where the canal intersects the river, the canal company, in constructing the canal, built a dam across the river which serves as one bank of the canal. It was built for the purpose of damming back the water of the river so as to get sufficient water to float boats through that part of the canal constructed within the river. At the time this suit was brought it had been standing more than forty years. It consists of stone-work at the bottom and heavy timbers on the top. The defendants do not deny the complainants' right to maintain that part of it which is permanent. But the complainants claim the right to increase the height of the permanent structure by placing on it, between upright iron bolts driven in the timbers, movable boards (usually called flash-boards) eight inches wide, extending from one end of the dam to the other, and to keep them there each year during the time the canal is open for navigation. This claim is the subject of the contention. The defendants deny the right set up by the complainants, and provoked this suit by repeatedly removing the boards from the dam in July, 1875. The defendant Henry McFarlan is the owner of a rolling-mill built on the west bank of the river, over seven hundred feet above the dam. The mill is run by water-power. The water from his wheel is discharged through a tail-race, emptying into the river six hundred and eighty-six feet above the dam. It is not disputed that, when the flash-boards are on and the dam is full, the water is thrown back on the wheel of the rolling-mill to such an extent as to greatly impair its power. There has been a mill on this site for many years. The defendant has operated a mill there, as owner, since 1856.

The important question of the case is, Have the complainants a right to increase the height of their dam, each year during the navigation season, by the addition of the flash-boards? The bill presents a case of strict legal right; no consideration of purely equitable cognizance is mentioned. Protection is sought in this court because the injury alleged is irreparable. The bill avers, first, that the right of the complainants to maintain the dam, with the addition of the flash-boards, has been fully acquiesced in by all persons ever since its first exercise, more than forty years ago, and that they have never been disturbed in the enjoyment of it; and, second, that before its construction the canal company acquired of the persons interested the right to construct and maintain the same. No attempt has been made to show a right acquired by the exercise of the power of eminent domain, nor by the production of an existing written grant. The complainants' right, therefore, if they are restricted to the case made by their bill, is such only as they have acquired by adverse use. That, in my view, is the only ground upon which, according to the established practice, they can ask relief. They must recover, if at all, upon the case made by their bill. They cannot make one case by their bill and another by their proofs, and still have a decree. *Andrews* v. *Farnham*, 2 *Stock.* 91; *Parsons* v. *Heston*, 3 *Stock.* 155; *Howell* v. *Sebring*, 1 *McCart.* 84, 90; *Marsh* v. *Mitchell*, 11 *C. E. Gr.* 497, 499; *Wilson* v. *Cobb*, 1 *Stew.* 177.

This action was commenced July 29th, 1875. There is no proof of the use of flash-boards prior to 1845. A single witness swears he assisted in putting them on in that year. Another says they have been put on every spring and taken off every fall, for twenty years, as near as he can recollect. He testified May 31st, 1876. The evidence will, perhaps, justify the conclusion that they have been used every year during the summer, from 1845 to 1875. The evidence also tends to show that they were occasionally removed by the defendant when they raised the water to such a height as to obstruct the wheel of his mill. The dam was repaired in

Lehigh Valley R. R. Co. *v.* McFarlan.

the spring of 1857, the old timbers being removed and others being put in their place. The person who superintended the work done in repair, swears the height of the dam was increased three inches—the timbers removed being eight inches, and those put on being eleven—and that the addition was made by direction of the supervisor. Mr. William Groff, who acted as supervisor from 1856 to 1874, admits constant efforts were made, during his employment, to raise the water. He says: "The canal has always been raised; there is no use talking, we did raise the water, for that was the customary thing for us to do; it has been the custom of the thing, and if it was only added to inch by inch, we did it." It is not shown that the defendants' wheel suffered any serious obstruction from back-water prior to 1857, but in that year, after the repairs were completed and the flash-boards were put on, it became so great as to seriously impair the capacity of the mill. It is undisputed that Mr. McFarlan, in that year and in subsequent years, both in person and by his agents, forbade the use of the boards and denied the right of the canal company to put them on. In the spring of 1858, the resistance of his agent, Mr. Hinchman, was so determined that the person who was ordered to put them on, refused, for three days, to incur the risk; and it was not until the resident engineer went to the dam, himself, supported by half a dozen canal employes, and threatened Mr. Hinchman with personal injury if he persisted in his resistance, that the boards were put on. His opposition was overcome by superior force. The boards put on, on this occasion, were removed later in the season, and others, less in width, put in their place. The evidence shows conclusively that, from 1857 down to the commencement of this suit, Mr. McFarlan has constantly disputed the right claimed by the complainants, and forbade its exercise. The supervisor says the boards were frequently, during this period, put on in defiance of Mr. McFarlan's protest, in which he declared: "You have no right to put them on, and the day is coming when you shall not do it." It is

undeniable, the right was exercised in defiance of resistance so far as resistance could be made by words, and in spite of a threat that, if it was persisted in, resort would be had to more efficacious means of protection.

The right claimed is an easement of flowage, and can only be supported by proof of facts which will justify the presumption of a grant. Every riparian owner has a right to have the waters of a natural stream passing through or along his land, to flow in their accustomed channel freely, without obstruction or diversion, and he who attempts to obstruct their natural course must show a grant, either actual or presumptive, or answer for an unlawful act.

Title to an easement acquired by adverse user rests upon a presumption of an actual grant which has been lost. The legal theory is, that no man will, knowingly, allow another, peaceably and uninterruptedly, to have the exclusive adverse enjoyment of a valuable right in his lands, under a claim of title, for twenty years, unless the adverse right is founded on a grant which he is bound to respect; and hence, in every case where such a user is shown, the law, for the purpose of quieting titles and avoiding disputes respecting stale rights, presumes that an actual grant was originally made. To raise this presumption it must be shown that the use or enjoyment has extended over a period of twenty years; and, also, that it has been continuous and peaceable. Long—that is, during the time required by law; continuous—that is, uninterrupted by any lawful impediment; and peaceful— because if it be contentious and the opposition be on good grounds, the party will be in the same condition as at the beginning of his enjoyment. There must be *longus usus*, *nec per vim*, *nec clam*, *nec precario*. *Gale & What. on Eas.* 122, *marg. note; Washb. on Eas.* 112; *Sargent* v. *Ballard*, 9 *Pick.* 251.

To show that it was peaceful, proof of acquiescence by the owner of the servient land in the exercise of the right, is indispensable. The presumption of a grant can only be made when it is a natural and logical consequence of the

conduct of the parties. If he who claims an easement in the lands of his neighbor, has openly and continuously, for twenty years, asserted it, by a uniform course of conduct, and actually enjoyed it, and his neighbor has neither denied nor disputed his right, but, by long silence and submission, has conceded it, the presumption that he submitted to the invasion because he could not help it, is natural, reasonable and logical, and does not seem to be very far from absolute certainty. But where the user has been exercised by force, or by permission, or in the face of protests, and in defiance of resistance, such a presumption is impossible. Reason and justice are both against it. In such a case, positive evidence of both acts and words excludes all presumption. Resistance, by verbal remonstrance or denial, is sufficient. A citizen of this state is not required to break the peace or commit a trespass to prevent an invasion of his lands from ripening into a title.

At common law, any acts of interruption or opposition from which a jury might infer the enjoyment was not rightful, were sufficient to defeat the effect of the enjoyment, the question being, whether, under all the facts of the case, such enjoyment had been had under a concession of right. *Gale & What. on Eas.* 123, *marg. note.* The supreme court of Massachusetts, in *Powell* v. *Bagg,* 8 *Gray* 441, said: " An easement in the land of another can be acquired by adverse user only when it appears such user was exercised with the acquiescence of the owner. From such use of an easement for twenty years, the law will presume a grant, but if, before the lapse of that time, the owner of the land, by a verbal act on the premises in which the easement is claimed, resists its exercise and denies its existence, his acquiescence in the right is disproved, and the essential elements of a title by adverse use are shown not to exist. Such a case is unlike the case where a title to land is claimed by adverse possession, and where the true owner is disseized. There a mere verbal command to leave or prohibition to occupy, is not sufficient to overcome the presumption arising from the

fact of the actual possession by the adverse claimant. But the title to an easement stands on entirely different ground. The owner of the servient lands remains in possession; he is not disseized; the title of the person claiming the easement rests, chiefly, on the owner's acquiescence in the adverse use, and any evidence which disproves acquiescence, disproves his title." And to the same effect is the reasoning of Justice Woodbury, in *Stillman* v. *White Rock Manf. Co.*, 3 *Woodb. & M.* 538 : "A grant of an easement will not be presumed, when it appears that the owner of the servient estate has frequently, during the period of its exercise, remonstrated against its exercise. The exercise of the right must be wholly peaceable, and always hostile, to constitute a good prescription." The same doctrine, substantially, is declared in *Nichols* v. *Aylor*, 7 *Leigh* 546 ; *Livett* v. *Wilson*, 3 *Bing.* 115 ; *Eaton* v. *Swansea Water Works Co.*, 17 *Q. B.* 267, 275. It rests on reason and is founded in justice.

According to the rules just stated, the proofs render the presumption of a grant in this case simply impossible. Their force, in disproof of such presumption, is irresistible. Acquiescence means assent and concession, not contention and resistance. No title by adverse user is shown.

It was insisted, on the argument, that, independent of any question of legal right, the acts and omission of Mr. McFarlan estop him from denying the complainant's right. It is claimed that the proofs show that he stood by passively for a long time, and permitted the complainants to expend large sums of money in deepening their canal and enlarging their boats, under the belief that they had an easement of flowage in his lands, and also that he, as director of the canal company, joined in the execution of the lease under which one of the complainants is now operating the canal. But, in my view, neither fact is established by the evidence. I regard it as entirely clear that the complainants were not misled by anything Mr. McFarlan said or did. He constantly resisted the right they now assert, and compelled them to exercise it in strife. It is true, he incidentally

Stout *v.* Seabrook's executors.

stated that he was at one time a director of the canal company, but it does not appear that he was so at the time the lease was negotiated or executed. So important a fact ought not to be presumed at this juncture, especially when it appears that the party seeking the benefit of it had it in his power, by a single question on cross-examination, to show whether it existed or not. But the decisive answer to this insistment is, that no such ground of relief is presented by the bill. Before the defendant can be deprived of any defence he may have to the complainants' action, on the ground of estoppel, he has an undoubted right to be plainly and distinctly informed of the facts which create the estoppel, and to be afforded an opportunity to disprove them.

In my judgment, the complainants have failed to establish a title to the easement they claim. Their bill must therefore be dismissed, with costs.