The bill of complaint alleges a prescriptive right in complainants and others similarly situated to the use of a 4-foot strip of land running westwardly from Mississippi Avenue in Atlantic City for a distance of 175 feet, which 4-foot strip is contiguous and to the north of a 9 1/2-foot strip also running westwardly from Mississippi Avenue for a like distance *Page 610 
of 175 feet. Complainants, excepting as hereinafter noted, own the land to the south of the 9 1/2-foot strip and the defendant owns that to the north of the 4-foot strip.
The evidence with reference to the creation of these physical conditions on the property discloses that in 1910 the owner of all the lands of both complainants and defendant, on both sides of Leopold Terrace, including the 9 1/2-foot and the 4-foot strips, developed the tract by building small brick dwellings on the south side of the 9 1/2-foot strip, at which time there was erected on the lands to the north of the 9 1/2-foot strip a hotel fronting on Mississippi Avenue, with an open space or lot of about 30 feet in the rear or to the west of the hotel building and to the west of that open space two small frame dwellings which fronted on the 9 1/2-foot strip aforesaid, but which were to the north of the 4-foot strip. The developers caused this strip of land between the north and south properties to be named Leopold Terrace. In the deeds from the developers to the complainants and their predecessors in title the description ran to the middle of Leopold Terrace, subject to the right of property owners on both sides of the terrace to the use thereof for its full width of 9 1/2 feet for ingress and egress. Deeds to complainants also disclose a right of way three feet wide in the rear of complainants' properties extending their entire length, so that complainants had ingress and egress to and from their properties from both the front and the rear thereof. At the time of the development and coincident with the opening of Leopold Terrace in 1910 the developer, The Square Deal Realty Company, paved Leopold Terrace with cement its entire width from houseline to houseline, i.e., 13 1/2 feet, which strip, of course, included both the 9 1/2 feet as well as the 4 feet. The entire 13 1/2-foot strip has been used continuously since 1910 by complainants and their predecessors in title, as well as by defendant and her predecessors in title. In addition to these users, the general public has likewise used the 13 1/2-foot strip for ingress and egress over Leopold Terrace. There is no evidence of a dedication of the terrace as a public way nor is there any contention that there was a dedication. *Page 611 
The 4-foot strip aforesaid is referred to as a sidewalk in the bill of complaint but the fact is that it is not laid out as such as it appears upon an inspection of the premises. The cement pavement is of uniform height for its entire length and width, not being separated by curb or other markings or elevation. It is part and parcel of a pavement 13 1/2 feet in width and has continued so to be since it was laid in 1910 as aforesaid.
It appears that complainants Benevento and Ferrante are not now owners of 2304 and 2306 Leopold Terrace, and while complainant Auerbach was unable to produce her title papers, the evidence established satisfies me that she is, in fact, the owner of 36 South Mississippi Avenue.
Defendant purchased her property by purchasing the tax title in 1943, at which time the hotel formerly standing at the northwest corner of Leopold Terrace and Mississippi Avenue had been razed, leaving a vacant lot. Defendant, upon acquiring title, erected a 6-foot tight board fence along the entire 175-foot line of Leopold Terrace, embracing within the enclosure of the fence the 4-foot strip and thereby excluding complainants and the public from its continued use.
Complainants ask for a mandatory injunction requiring the removal of this obstruction to the claimed right to the use thereof by complainants and the public.
The evidence clearly satisfies me that complainants and their predecessors in title and defendant's predecessors in title have continuously and uninterruptedly used Leopold Terrace for its entire 13 1/2-foot width and its 175-foot length since 1910 and that the Square Deal Realty Company in that year paved the entire 13 1/2-foot strip for the use and convenience of the purchasers of the property on the north and south sides of said terrace, and that as long as the Square Deal Realty Company continued in ownership of any of the lands to the north or south of said terrace, the terrace continued to be used as a 13 1/2-foot strip by the purchasers of the lands on either side thereof, and that said use was joined in by the public with the full knowledge and acquiescence of the Square Deal Realty Company, and that after the Square Deal Realty Company had conveyed all of its holdings, the *Page 612 
purchasers on each side of the 13 1/2-foot strip aforesaid continued to use it for ingress and egress to their respective properties, with the knowledge and consent of the other owners, and that this use was not discontinued at any time during that period until defendant erected the fence aforesaid.
It appears that in 1927 a sewer line was laid along the north side of the terrace and I am satisfied from the evidence that this sewer line was laid under the surface of the 4-foot strip. It is so testified by complainants and their witnesses and not denied by any positive proof on the part of the defendant. It is true that Mr. LeChard of the Sewerage Company, said that his records seem to indicate that no portion of the cement on the 13 1/2-foot strip was broken in order to lay the sewer, but he himself has no direct knowledge thereof and it seems quite clear that not only was the cement on the 4-foot strip broken and the sewer laid thereunder, but that after this work was done the surface of the 4-foot strip was re-cemented and the property owners on each side of the terrace paid their respective share of the cost thereof. It is true that they also paid for house connections to the sewer and for patching cement on part of the 9 1/2-foot strip, and perhaps for patching the cement strip to the south of complainants' properties. It is significant in this connection that the testimony justifies a finding that when defendant erected her 6-foot board fence part of the cement paving was embraced within the fence enclosure and that this has since been removed by or through the defendant. Defendant's husband denies this for her but I find against his testimony.
From the foregoing findings complainants urge that they are entitled to a decree, but defendant claims that under the form of the bill complainants are not so entitled because they base their right on an allegation that they, as members of the general public, are entitled to have declared the prescriptive right to user and that they do not claim it under the bill as a personal right as distinguished from the alleged right in the public.
It is, of course, fundamental that the mere use of a way in common with the general public, although it may establish a public road, cannot establish a private right of way, and *Page 613 
that such use is regarded as being under an implied license and is not adverse, unless there is some act on the part of the claimant indicating an independent assertion of right more pronounced and more clearly indicative of a claim of right than his open and notorious use of the way. 19 C.J. 898 § 76.
In DeLuca v. Melin, 103 N.J. Law 140; 134 Atl. Rep. 735, it is said (at p. 144): "one cannot successfully contend for title by adverse possession where that possession is as a member of the public, in common with all others exercising and enjoying the privilege of use and occupancy, for the reason that such possession and use is lacking the necessary elements of exclusiveness."
In Albright v. Cortright, 64 N.J. Law 330; 45 Atl. Rep. 634
(at p. 333), it was said:
"A right that a man claims merely as one of the public does not lie in grant, and therefore not in prescription, which presupposes a lost grant, and so can embrace only things that are grantable. * * * Mr. Greenleaf says: `Prescription is a personal right, belonging to one or a few persons by particular designation, as, for example, the owners of a certain parcel of land.'"
Without multiplying the numerous cases firmly establishing the doctrine argued by the defendant, let us refer to the complainants and the evidence adduced at the hearing.
Complainants aver that they bring their "suit on behalf of themselves and of others similarly situated who may come in and contribute to the expense;" that complainants reside on the south side of Leopold Terrace and are owners of the properties in which they reside; for more than 35 years Leopold Terrace has been recognized and considered as a public thoroughfare;" that in the year 1908 (1910 is the correct year) the 4-foot cement strip was laid on the north side of Leopold Terrace and that during the entire period since that time "the public has used, andparticularly the complainants," the sidewalk; that a sewer was laid with the consent of the property owners on both sides of Leopold Terrace and that a fireplug was put in the sidewalk; that various persons from time to time owned the premises purchased by defendant, *Page 614 
"but none of the prior owners ever objected to the location of the sidewalk or the public user of the same; that for more than 35 years the sidewalk has been used by them (complainants) and the public, with the full knowledge of prior owners, "and thatthe public and complainants have a prescriptive right in them to use the said 4-foot strip;" that the fence erected by defendant "depreciates the value of their property and takes away a prescriptive right which they have long enjoyed," and that "they are entitled to enjoy, as well as the public, the rights accorded from a long use of the sidewalk."
It will be observed that there is no allegation of an "independent assertion of right" in complainants which is "more pronounced and more clearly indicative of right than their open and notorious use of the right of way in conjunction with the general public." There is no allegation that any right accrued to complainants by reason of the fact that their properties were located on the south side of Leopold Terrace. There is no allegation of an exclusive right in complainants independent of the right of the general public. The conveyance to them, as said before, was to the middle of the 9 1/2-foot strip, with right of ingress and egress over that strip. They and the general public have at all times also enjoyed the use of the 4-foot strip but complainants have no right to the use thereof independent of their being a part of the general public. The use of the 4-foot strip is casual as to complainants. Their lots do not abut on the 4-foot strip nor is it in any way necessary to the enjoyment of their properties in so far as ingress and egress is concerned.
The proofs show that in the grants to complainants' predecessors in title the common grantor conveyed to complainants to the middle of the 9 1/2-foot strip and reserved to them a right of way for ingress and egress over that strip and that having done so, their common grantor paved not only the 9 1/2-foot strip but the 4-foot strip, and permitted complainants and their predecessors to use the additional strip in common with the owners of land on the south, as well as the general public.
The general rule with reference to the use by the public *Page 615 
as affecting acquisition by individual of right of way by prescription is stated in an annotation in 111 A.L.R. 221, in practically the same language as in 19 C.J., supra, to wit:
"Individual acquisition of a right of way by prescription has been generally, if not universally, held impossible, where the same right of user upon which the claim is based has likewise been exercised indiscriminately by the general public, upon the theory that such a situation prevents the individual user from being `exclusive' within the meaning of that term as an essential requirement for the founding of prescriptive easements; such founding is based upon the presumption of a grant, but use in common with the public is regarded as negativing this presumption, so that, if such common use exists, the individual user must, in order to secure the benefit of the original presumption or establish an independent prescriptive right, perform some act, brought home to the owner of the servient estate, clearly indicating the user's claim."
Numerous citations in support of the rule above quoted includeDeLuca v. Melin, supra.
In the case of Day v. Allender, 22 Md. 511, it is said:
"The proof of a private way must correspond with the description, * * * but the allegation of a private way may be supported by evidence of a public way; for in these cases the latter includes the former. * * * If the proof is of a use common to all others as well as to the party claiming the way, it does not establish a private way. * * * The presumption of a grant * * * must be founded on proof of an adverse, exclusive, and uninterrupted enjoyment, * * * and although this presumption may be made * * * from the character of the user itself, * * * yet, when it is shown by the evidence the easement was enjoyed in common with others, the presumption in favor of the individual ceases."
The proofs in this case all are directed to the general public's use in common with complainants of the entire 13 1/2-foot strip and that the use thereof by complainants is as casual as that of the general public, excepting perhaps the use by complainants may be more frequent. Of course, when complainants enter the terrace from the south their use is of the 9 1/2-foot strip and when they enter from the north they cross the 4-foot strip to get to their homes. *Page 616 
It is true that the requirement of "exclusive" as regards acquirement of an easement of way by prescription does not mean that the complainants shall have been the sole users, or the only ones who might or could enjoy the same over the same land, but simply that the individual right shall not depend for its enjoyment upon a similar right in others, being, by virtue of some distinction of its own, independent of all others.
It has been further held that the use is "exclusive" when it is proprietary, not a use by the public generally, and is exercised under some claim which is independent of, and does not depend for enjoyment upon, similar rights of others It is not necessary, however, that the claimant be the only one to enjoy the right of way, as other persons may acquire a prescriptive right to use it.
As said in Lehigh Valley Railroad Co. v. McFarlan, 30 N.J. Eq. 180,
complainants are entitled to a decree, if at all, upon the case made out by their bill. They cannot make one case by their bill and another by the proofs and still have a decree.
It seems clear both from the bill and the proofs in support thereof that complainants' claim of a prescriptive right is as members of the general public and that they have established no independent right in themselves.
 *Page 1