## BOND *v.* UNKNOWN HEIRS OF BARELA.

### APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 558. Submitted December 17, 1912.—Decided June 9, 1913.

The proceedings on which the grant involved in this case was issued are substantially the same as those in *United States* v. *Sandoval,* 167 U. S. 278.

Whether the original grant made in 1739 by royal authority of Spain was in severalty or communal, whatever was unallotted passed into the public domain of the United States upon the acquisition of the Territory.

In this case *held* that the confirmation of a Spanish grant under the act of July 22, 1854, on the application of a town claiming to be the owner, passed the title to that town unburdened with any trust for heirs or grantees of persons named in the original petition and royal decree.

16 New Mex. 660, affirmed.

THE facts, which involve the title to a large tract of land in New Mexico, are stated in the opinion.

*Mr. Richard H. Hanna* and *Mr. Francis C. Wilson* for appellants.

*Mr. Frank W. Clancy* for appellees.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This suit was begun by a petition for partition and to quiet title, filed by George W. Bond and eighty-two others in the District Court of Valencia County, New Mexico, against the unknown heirs of twenty-nine persons named, all deceased, and the unknown owners, proprietors and claimants of the premises commonly called the Tomé grant situate in that county and described as containing 121,594.53 acres. The plaintiffs alleged that they were owners of an undivided half interest.

The town of Tomé appeared and answered, denying any title or interest in the plaintiffs, averring that the grant by Spain was to the town in communal right, was confirmed by act of Congress to the town, a then existing municipality, was so patented by the United States, and was incorporated under the laws of New Mexico; that allotments were made of parts of the land to settlers on the grant in fee in severalty, and ownership of the residue was in the municipality and had been held by it exclusively and adversely since it was patented, April 5, 1871.

Doroteo Cháves, with three hundred and ninety-one others, appeared and answered, denying any individual right in any of the plaintiffs, adopting the answer of the town as to the communal character of the grant, averring that they were themselves severally owners in fee of parts of the grant, and resisting partition.

Translations of the title papers were, by stipulation, made parts of the answers. Demurrers to the latter were overruled, and a reply was filed, to which there was a demurrer. This demurrer was sustained, and, the plaintiffs electing to stand upon their reply, judgment was rendered dismissing the suit. Upon the plaintiffs' appeal the Supreme Court of the Territory affirmed the judgment, 16 New Mex. 660, and on a further appeal the case is now before this court.

The facts are settled by the pleadings. The questions here are, whether the original grant made by the Crown of Spain in 1739 was in fee in individual right or in communal right to the town, title remaining in the Crown except as to specific parcels allotted to individuals, and whether, if it was a grant in individual right, the confirming act of Congress, and the patent pursuant thereto, changed its character.

The facts, as shown by the record, are these: Juan Barela, with twenty-eight others, in 1739 petitioned that the governor "be pleased to donate to them the land called Tomé Dominguez, granted to those who first solicited the same and who declined settling thereon." The governor did "grant to them, in the name of His Majesty, whom may God preserve, the land petitioned for, called the land of Tomé Dominguez, for themselves, their successors, and whomever may have a right thereto under the conditions and circumstances required in such cases, and which is to be without prohibition to any one desiring to settle the same, holding and improving it during the time required by law. In view of which, I should order, and did order, that said senior justice or his lieutenant, whose duty it is, shall place them in possession of the aforementioned lands, giving in all cases to each one the portion he may be entitled to in order to avoid difficulties which may occur in the future."

There was a giving of "juridical possession," a form and

ceremony essential to the passing of title by grant under
the Spanish law. The report of the officer conducting this
ceremony, so far as here material, is as follows: "In the
new settlement of 'Nuestra Señora de la Concepcion de
Thomi Dominguez,' instituted and established by Don
Gaspar Mendoza, actual governor and captain general of
this Kingdom of New Mexico, on the thirtieth day of the
month of July, in the year one thousand seven hundred
and thirty-nine, . . . the parties concerned being
together, I proceeded to the above-mentioned place, and
all being present, I notified them of the decree; I took
them by the hand, walked with them over the land; they
cried out, pulled up weeds, threw stones, as required by
law; and having placed the new settlers in possession of
said lands, I gave them the title and vocation they should
have in the settlement, which bears the name afore-
mentioned. . . . And the first proceedings having
been noted, I proceeded to establish the boundaries as
contained in the first petition . . . at which principal
boundaries I ordered them to perpetuate their existence
with permanent land marks, pointing out to them also, as
a means of good economy, their common pastures, water
and watering places, and uses and customs for all, to be the
same without dispute, with the condition that each one
is to use the same without dispute, in equal portions, the
richest as well as the poorest; and by virtue of what has
been ordered, I pronounce this royal possession as suffi-
cient title for themselves, their children, heirs and suc-
cessors, to hold their lands now and forever at their will;
directing them, as I do direct them, to settle the same
within the time prescribed by the royal ordinances: and
for their greater quietude, peace, tranquility and har-
mony, I proceeded to point out the land each family should
cultivate, each one receiving in length a sufficient quantity
to plant one fanega of corn, two of wheat, garden and house
lot, as follows:" Here follow nineteen names of original

petitioners as given allotments of land, the name Manuel Carrillo appearing twice. Ten of the petitioners were not allotted lands, and among those who obtained allotments were five who were not petitioners.

It is unnecessary to discuss at length the question whether the grant made in 1739 passed a title to the persons therein named to the whole tract, or whether this was merely a grant in severalty of the lands allotted to the persons named in the report showing juridical possession, leaving title to the unallotted lands in the Crown, to be allotted to future settlers. Examination shows that the petition, decree and report of juridical possession are in form substantially like those in *United States* v. *Sandoval*, 167 U. S. 278, wherein the effect of such instruments is discussed at length. See also *United States* v. *Santa Fe*, 165 U. S. 675; *Rio Arriba &c. Co.* v. *United States*, 167 U. S. 298; *United States* v. *Pena*, 175 U. S. 500.

The fact that the governor made the grant "to be without prohibition to anyone desiring to settle the same," that the juridical possession was to be by "giving in all cases to each one the portion he may be entitled to," and that juridical possession and allotment of land was made to persons not petitioning—in the theory of the plaintiffs, not beneficiaries of the decree—while no land was allotted to ten of the petitioners, who, according to the same theory, were beneficiaries, is not explicable on any other theory than that the grant was communal, in which settlers and no others could by allotments obtain individual, several interests. On this construction the omission of allotments to petitioners not identifying themselves with the new settlement would be the necessary consequence, as also would be the allottments to new settlers who were not petitioners.

Had the matter stopped there—had no grant been made by Congress—the grant must have been effective only as to the lands allotted in several right to those named in

the report of juridical possession. Title to and power of disposal over the residue of the land remained in the Crown and passed to the United States upon the acquisition of the territory.

There was, however, Congressional confirmation of the grant. In 1856 the inhabitants of Tomé petitioned the surveyor-general for New Mexico for confirmation of the grant to the town, conformably to the act of July 22, 1854, 10 Stat. 308, c. 103. It was so confirmed by the act of December 22, 1858, 11 Stat. 374, c. 5; and, April 5, 1871, patent issued to the town of Tomé. It is said that the legal title so passed is subject to a trust for the heirs of the original petitioners, who, it is claimed, were beneficiaries of the decree of the Spanish governor in 1739.

As no benefit of that decree, and no title to any of the land, passed to any of the petitioners save those to whom allotments were made, and only to the allotted tracts, no further discussion is necessary. When patent to the entire grant issued to the town of Tomé, title to all the unallotted land passed from the United States to the town unburdened with any trust for heirs or grantees of persons named in the original petition and decree.

*Judgment affirmed.*