[No. 2900, Sept. 8, 1925. Rehearing denied Jan. 7, 1927.]

BOARD OF TRUSTEES OF TOWN OF TORREON LAND GRANT v. GARCIA et al.

[252 Pac. 478.]

SYLLABUS BY THE COURT

1. The town of Torreon, a municipality, sought to quiet title to certain lands claimed by it. Defendants claimed to own said land by virtue of certain granting papers from the Mexican nation, by confirmatory deeds from the plaintiff municipality, and by adverse possession. The trial court found that the plaintiff had no title, and that the defendants are the owners in fee simple and entitled to the possession of the tracts claimed by them. There are no specific findings of facts and conclusions of law separately stated. **Held** that, where no specific findings of fact

[1] 5CJ p. 1428 n. 53; 4CJ p. 735 n. 25; p. 775 n. 29; p. 787 n. 47; p. 1068 n. 22.

and conclusions of law are made by the court, and such failure of the court is not by proper proceedings made the basis for remand in order that the making of such findings, of facts and conclusions of law may be required, as was done in Morrow v. Martinez, 27 N. M. 354, 200 P. 1071, this court will indulge every presumption in favor of the correctness, and regularity of the decision of the trial court, and, the requirement that the appellant show clearly that it cannot be sustained on any theory not being met, such decision will be affirmed.

Appeal from District Court, Torrance County; Ed Mechem, Judge.

Suit by the Board of Trustees of the Town of Torreon Land Grant against Nemecia Garcia and others. Decree for defendants, and plaintiff appeals. Affirmed.

Renehan & Gilbert, of Santa Fe, for appellant.

E. P. Davies and Geo. W. Prichard, both of Santa Fe, for appellees.

### OPINION OF THE COURT

BICKLEY, J. [1] The plaintiff (appellant) brought suit on August 9, 1918, against a number of persons to quiet its title to the Torreon Land Grant. Answers were filed alleging, in general, among the important defenses, want of knowledge of the due election of the plaintiff board of trustees; denial that the plaintiff is the owner in fee simple and in possession of the lands involved, but alleging that the same are owned in fee simple by the defendants and other settlers of the town of Torreon, to whose ancestors and predecessors in title the land was granted by Mexico in 1841, and confirmed by Congress, setting up the granting papers; that the defendants are in adverse possession of certain described parcels, and so had been for more than ten years individually; denial of not admitted allegations; and asserting claim to their respective individual tracts within the grant; and praying that their respective individual tracts of land be quieted in them. Replies were filed, containing general denials and allegations that the predecessor board had unlawfully distributed the land on the theory that the grant was not a town grant but a grant to individuals, and that it descended

to heirs who were entitled to partition, and made them deeds; and further alleged that the conveyances made by the said board were and are void. Amended replies were filed, denying the allegations of new matter in the answers, and alleging the statute under which the grant was confirmed by Congress to the town of Torreon and its successors, denying the alleged adverse possession, alleging the failure to pay taxes, and otherwise following the form of the original replies. Nearly all the defendants demurred to the amended reply as containing no defense, in part a departure, claiming estoppel of the plaintiff to question the deeds, and as constituting a collateral attack on said deeds. The defendants filed separate answers, which were virtually identical with their joint and several answers.

A final decree was entered in favor of the defendants respectively June 2, 1920.

A motion to vacate the decree was filed, and an amended motion for that purpose was made July 15, 1920, and an order was entered July 22, 1920, vacating said decree. The plaintiff then requested certain findings and conclusions, which were denied April 27, 1921, and the former decree was reinstated. The plaintiff, before the reentry of said decree, asked leave to file a second amended reply, which was refused. An amendment to the complaint was allowed by interlineation, so that it was averred that the town of Torreon, a municipality, was the owner in fee of the said grant.

Appellant relies for reversal of the cause upon certain errors assigned, urged in its brief ten points. We shall discuss such of these as seems to be necessary.

It is claimed by appellant that the court erred in overruling the demurrers to the answers of defendants. The only argument made in the brief of the appellant on this point is that the demurrers are predicated on the failures of the answers to allege the payment of taxes for the ten years as a part of the claim of defendants of adverse possession, and that "the law of 1899 defining adverse possession is a general law and is uni-

versally applicable." This is the only ground of the demurrer we will consider. See Raymond v. Holt (N. M.) 141 P. 156.

We assume that appellant alludes to chapter 63 of the Session Laws of 1899, which was "An act to amend sections 2937 and 2938 of the Compiled Laws of 1897." We think the fact that the Legislature by that act amended each of said sections with respect to the disability provisions, but only section 2938 with respect to the payment of taxes, making the payment thereof a constituent element of adverse possession, and did not amend section 2937 in this respect, indicates that it was not intended to make the requirement contained in the amendment of universal application. From the record it appears that the defendants, so far as possession was concerned, claimed under section 2937. See, also, Montoya v. Unknown Heirs of Vigil, 16 N. M. 349, 120 P. 676, wherein these two sections are differentiated.

There are a number of assignments of error which are not argued in the brief of appellant, the brief containing merely a restatement of the assignments of error. These we will not consider. In Klasner v. Klasner 23 N. M. 627, 170 P. 745, we said:

"The first, fifth, sixth, eighth, tenth, eleventh, twelfth, fourteenth, fifteenth and sixteenth assignments need not be discussed for one or the other of the following reasons: First. A portion of the assignments are not discussed in appellant's brief; the points raised by the assignments simply being stated without any attempt at discussion or citation of authorities, and it has frequently been held by both the state and territorial Supreme Courts that assignments of error, not argued by counsel in their brief, will not be considered and passed upon by this court; that when such assignments are not argued they are deemed to have been waived. (Authorities cited.) Second. The points raised by some of the assignments of error are disposed of by what is hereafter said under assignments discussed."

The foregoing rule is applicable here.

We think the alleged error of the court in refusing to allow the filing of the second amended reply, which was tendered after the case had been tried and after

the decree had been vacated and set aside to permit appellant to present its further objections thereto, is ruled by Holtoff v. Freudenthal, 22 N. M. 377, 162 P. 173, where the argument to reopen the case was made upon grounds similar to those in the case at bar, and where the court decided that a discretion to grant relief of this kind must be left to the court charged with the administration of the law in the first instance. We have examined the record and find no abuse of the discretion of the trial court in this respect.

Certain of the defendants, in addition to other claims of title, claimed by virtue of tax deeds, and exception was taken as to such defendants for the reason that the lands involved, being common lands of the grant, were not taxable. We have held to the contrary in Board of Trustees of Town of Tome v. Sedillo, County Treasurer et al., 28 N. M. 53, 210 P. 102, and State v. Board of Trustees of Town of Las Vegas, 28 N. M. 237, 210 P. 101.

We come now to a consideration of the two principal contentions of defendants: (1) That the grant was a town or municipal trust, and lands held thereunder did not pass by descent; and that (2) the deeds made by the Commissioners of the Torreon Grant to the defendants or their predecessors in title were unauthorized. These will be considered together.

The following is a brief statement of the facts pertinent to the status of the grant lands taken from appellant's brief: Application for the grant was made by and in the name of 27 persons, as shown by the joint and several answers. Juridical possession was given, holding some of it free, as the townsite and commons, and allowing to each petitioner a piece to cultivate 100 varas, measured from east to west, with particular donations to a few, the boundaries being fixed. It was approved by the Surveyor General May 12, 1859, as a town grant and transmitted to Congress for action. It was confirmed as a town grant to the town of Torreon June 21, 1860. As such town it was segregated from the public domain.

We have examined the granting papers appearing in the record, and we conclude that the proceedings effectuating the grant were very similar to those described as applying to the grant described in Williams v. Lusk, 28 N. M. 146, 207 P. 576, and similar to the proceedings in the grants described in the cases therein cited:

"The Mesilla Civil Colony grant lies within what is known as the Gadsen Purchase and was based upon a decree promulgated by the President of Mexico and regulations of the state of Chihuahua. Under these regulations lands were assigned to the colony both for cultivation and for grazing purposes. As was customary under the laws of Mexico, allotments were made of numerous tracts of agricultural lands, of which the allottees became the owners in severalty, and the unallotted land was designated for the common use of all of them for grazing and other purposes. In this particular colony some two leagues of land was allotted as agricultural, and the remainder left for common use. This agricultural land was from time to time divided among the settlers, an allotment of a specific tract being made to each of them. Cultivation of the lands near Picacho, where the tract here in question was situated, was apparently carried on for many years, but a change in the course of the river made further irrigation difficult or perhaps impossible, and cultivation was abandoned. The tract here in dispute lay within these agricultural lands.

"The land which is the subject of this litigation is a part of tract No. 1. Appellee based her claim of title to it disregarding the question of possession upon a deed from the incorporation of Mesilla dated May 11, 1918, signed by its president and secretary, and which in terms conveys the land to her. Since, under the findings of the trial court, this instrument constitutes her only title, the determination of its effect must be decisive of this case. Title to allotted lands passed to the allottee. United States v. Sandoval, 167 U. S. 278, 17 S. Ct. 868, 42 L. Ed. 168; Bond v. Barela, 16 N. M. 660, 120 P. 707; Id., 229 U. S. 488, 33 S. Ct. 809, 57 L. Ed. 1292. Unless, because of the breach of some condition, neither the government nor the grant authorities had any further right of disposition of, or control over them. They had the same status as other lands held in private ownership. Both the New Mexico Legislature and the Court of Private Land Claims in dealing with the Mesilla grant recognized this situation. The Legislature gave no power over such lands to the corporation it created. The court confirmed them to the corporation only as trustee for the actual owners in whom title had already vested. If the corporation acquired any title at all under this decree or under the patent it was merely as a naked trustee with no duties to perform holding the mere legal title for the real owners. Confirmation to the corporation

as trustee was only a convenient method of avoiding the inquiry into the title to each allotted tract within the grant which would have been necessary to a confirmation of the particular tracts to their individual owners. Certainly under general rules of law, such a trustee could have no power of disposition, and its deed is ineffectual as a conveyance of title. The act of the Legislature, which created this corporation and upon which its authority is wholly dependent, gives it no such authority. Its rights and powers as to effectual disposition are confined absolutely to the lands held in common."

In the case at bar the plaintiff introduced in evidence the confirmatory patent from the United States of America, the original of which was dated the 9th day of April, 1908, and rested without the introduction of further testimony. There being no evidence introduced showing the boundaries of the allotted lands or the common lands within the exterior boundaries of the grant or otherwise, the court found that the plaintiff had wholly failed to prove the allegation of ownership of, and title to, the land and property described in the complaint, to wit, that certain tract of land known as the "Town of Torreon Grant," more particularly described in the complaint, and, consequently, dismissed the complaint of the plaintiff . We find no fault with that action of the trial court.

The court then proceeded to find with respect to the answers and cross-complaints of the various defendants, that each of them named in the decree is the owner in fee simple and entitled to the possession of the various tracts of land described respectively. It appears from the record that deeds, bearing in the main dates in 1909, 1910, and 1911, were made to persons interested in the grant, some of whom are defendants and some of whom were predecessors in title of certain defendants claiming title by mesne conveyances from those interested in the grant.

The following is a quotation from one of the deeds from the commissioners of the grant in controversy, which is like the others in question:

"Spanish deed, dated April 12, 1910, from Ross Garcia, Carlos Chaves, and Francisco A. Zamoro, Commissioners of the Torreon Grant, a corporation, by virtue of the act of

the New Mexico Legislative Assembly, designated as title 22 of the Compiled Laws of 1897, to Tirsio Chaves, an heir of Manuel Antonio Chaves, one of the petitioners for the Town of Torreon Grant, witnesseth:   That, whereas, the said Tirsio Chaves has made and presented his application to the said Commissioners of the Torreon Grant for a deed and title to a certain piece or portion of land situated within the said grant, known as the land claim of the town of Torreon, being claim No. 22 confirmed by the act of the Congress of the United States of America approved June 21, 1860 (12 Stat. 71), entitled 'An act to confirm certain private land claims in the territory of New Mexico,' which land claim has been regularly surveyed and designated as in townships 5 and 6 north, range 6 each, and townships 5 and 6 north, range 7 east, N. M., containing 14,146.11 acres, and which said grant of land was patented by the United States to the said town of Torreon and its officers, April 9, 1908, and to which patent reference hereby is made for a more complete and accurate description, and which patent is registered in the office of the clerk of the probate court and ex officio recorder, in Book No. 1, Record of Patents, page 61, a record of the county of Torrance and territory of New Mexico, and the said commissioners having examined and considered such application and finding that the said Tirsio Chaves is a person interested in the said grant, and that the land hereinafter described for which he has made application as aforesaid is for agricultural purposes, and does not exceed 190 acres; now, therefore, these presents show that the said Ross Garcia, Carlos Chaves, and Francisco A. Zamoro, Commissioners of the said Torreon Grant as aforesaid, for and in consideration of the premises, and for and by virtue of the right and authority conferred upon them and which they have and possess by law, have given, granted, transferred, and confirmed and by these presents give, grant, transfer, and confirm to the said Tirsio Chaves, and to his heirs and assigns forever, for agricultural purposes, all the following tract and parcel of land and real property situated in and within the granted land of the town of Torreon aforesaid in the county of Torrance and territory of New Mexico, to wit:   Said land stands in the Canada del Cuervo; its boundaries are:   On the north, common land, and on the south the wall of the grant; on the east by common land, and on the west by land of Carlos Chaves and land of Serafin Perea and common land.

"To have and to hold, the said premises above conveyed and described, together with all rights, privileges and immunities pertinent to the same belonging to the said———— and his heirs and assigns forever."

The introduction in evidence of these deeds was resisted by appellant on the grounds that the execution of the instruments was an ultra vires act of the commissioners of the town of Torreon, for the reason that the deeds were never ratified and never approved by

the judge of the district court. The assignment of error covering this alleged error is as follows:

"The said commissioners' deeds, and each of them, were illegal, ultra vires and void, and the court should not have permitted their introduction in evidence, because they severally constituted a sale or alienation of the common lands within said grant, which was not permissible under section 11, c. 42, Laws of 1907, without a resolution of the board authorizing such sale or alienation, approved by the qualified voters within the grant at an election provided for by the said law, by majority of the persons legally voting thereat, and none of such required processes was observed, nor were they made upon resolution adopted by the board of trustees, and ratified by the people and approved by the judge of the district court of the district wherein said lands lie, to wit, Torrance county, as required by section 809 of the Codification of 1915."

The deeds in question recite that the Commissioners of the Torreon Grant constitute a corporation by virtue of the act of the New Mexico Legislative Assembly designated as title 22 of the compiled laws of 1897. It recites, among other things, that by virtue of right and authority conferred upon such commissioners and which they have and possess by law, after having examined and considered the application of the party claiming title to lands within the grant, found that such applicant, being a person interested in said grant, and that the land described for which he made application is for agricultural purposes, said lands were given, granted, transferred and confirmed to the applicant, etc. The recitals in the deed were not challenged as to the truth thereof, and the deeds were not attackd upon the ground of fraud; the only assault made upon them being that they were given without being properly authorized and as not being properly ratified as required by the statutes cited in the objection. · If we assume that the claim made by the commissioners that they acted for a corporation by virtue of title 22 of the Compiled Laws of 1897, and that they were acting upon authority and according to law, meant according to the law of the incorporation of the grant referred to in the deeds, we would conclude that the admission of the deeds was not subject to the objection assigned. It is not objected that the commissioners did not act for a cor-

poration formed under the statutes of New Mexico, in fact appellant brought out on cross-examination of a witness that Chaves, Garcia, and Zamoro at the time of making the deeds were acting as commissioners or board of trustees of the town of Torreon. After the evidence was all in the court permitted the plaintiff to amend its complaint so as to allege that it sued as the "town of Torreon, a municipality." Appellant claims that this amendment was allowed to conform to the proof. Our attention has not been called to any evidence as to the date of the incorporation of such municipality or the manner of the incorporation thereof. If it was, as the commissioners claimed in the deeds, incorporated under title 22 of the Compiled Laws of 1897, and was acting pursuant thereto, then the act of 1907, and section 809, Code 1915, referred to in the assignment of error above quoted, have no application, it being noted that the act of 1907 specifically exempts from its application any grant then being managed or controlled in any manner other than herein provided by virtue of any general or special act of any legislative assembly of New Mexico. On the other hand, in the event of a sale under title 22, Compiled Laws of 1897, § 2166, a resolution was required, but no ratification by election or approval of the court, and section 2176 provides a procedure whereby a person claiming in private ownership any tract, piece or parcel of land within the exterior boundaries of the land grant, may file a petition with the trustees asking confirmaton of his title, and that upon showing that his claim is sustained by the evidence, such board shall convey to the petitioner and his heirs and assigns the lands described in the petition, or so much thereof as is shown by the evidence to belong to such person. It is provided by the next section that any conveyance made in pursuance of the provisions of the preceding section shall operate to conclude all persons claiming the lands described in such petition.

So far as the record discloses, it may be that the proceedings attempted by the commissioners of the plaintiff municipality in the case at bar show some

imperfections, but as we have said, no objections were made or are now made which would challenge such imperfections.

The provisions of section 2176, Compiled Laws of 1897, are very similar to certain provisions of chapter 77, Laws of 1893, being:

'An act to authorize the city of Socorro and Candelario to dispose of certain real estate decreed to it and said Can delario Garcia, in trust, by the Court of Private Land Claims, and to make deeds to property owners within the limits of said grant, and for other purposes."

We have had occasion to consider the last mentioned act in connection with events similar to those in the case at ba in Crity of Socorro v. Cook, 24 N. M. 202, 173 P. 682, and we think the present case is ruled by the decision in that case, in so far as the admission in evidence of the deeds attacked are concerned, and otherwise.

Furthermore, it appears that there are a large number of defendants and cross-complainants claiming title to the lands involved; that the court decreed that their title be quieted, dividing them into more than 20 different groups; that in the main these cross-complainants supported their claim of title upon the theory that they were heirs or successors to the original allottees of the grant; that they were in possession under confirmatory conveyances from the plaintiff municipality and mesne conveyances, and that they had title by adverse possession. The only assault made on the showing of adverse possession is that payment of taxes, as a constituent element thereof, is not shown. This we have disposed of. Otherwise, appellant merely asserts that the evidence does not show adverse possession.

In Morrow v. Martinez, 27 N. M. 354, 200 P. 1071, we held that it is the duty of the trial court, in a case tried to it, to make specific findings of fact and conclusions of law sufficiently specific to enable the appellate court to review the decision upon the grounds upon which it was made below. In that case the party prevailing in the trial court alleged that he was the

owner in fee simple of the premises in question, and relied upon three distinct sources of title, viz.: (1) tax proceedings; (2) court proceedings consummated in a special master's deed; and (3) adverse possession under color of title. In that case we said:

"It is a right which the successful party has to have the court make such a record as will support the judgment, and it is a right the unsuccessful party has to have the court make such a record as will enable him to review the action if he so elects."

No error is saved on the failure of the court in this respect in the case at bar. Michigan has a section similar to our section 4197, Code 1915, relative to the court's duty to make findings of fact and conclusion.: of law, and the Supreme court of that state has often held that in the absence of such findings and conclusions they would not examine the testimony to see whether it supports the judgment. In the case of Putts v. Davis, 50 Mich. 310, 15 N. W. 486, the court said:

"The remaining assignments of error resolve themselves into this: That the judgment should have been for the plaintiffs on the evidence. But it was for the circuit judge, and not for this court, to determine what conclusions the evidence would warrant. If plaintiffs desired a review of the whole case in this court, they should have had the facts found, as well as the conclusions of law dependent upon them, and we could then have determined whether the conclusions were well founded."

In Reymond v. Holt, supra, we held (syllabus):

"Upon the party who alleges error in the action of the court below rests the burden of showing that the judgment or decree appealed from is clearly wrong, or that error to his prejudice has been committed, and an appellate court will not search the record and review questions not raised or insisted upon in order to reverse the judgment."

In Sandoval v. Unknown Heirs of Vigil, 25 N. M. 536, 185 P. 282, we said:

"Upon a doubtful or deficient record, every presumption is indulged in favor of the correctness and regularity of the decision of the trial court."

Where no declaration of law or finding of facts are given, the theory on which the trial court decided the case not being before the court, it is incumbent on ap-

.pellant to show clearly that it cannot be sustained on any theory. This the appellant has failed to do.

For the reason stated, the judgment of the trial court is affirmed; and it is so ordered.

PARKER, C. J., and WATSON, J., concur.

### On Motion for Rehearing.

BICKLEY, J. The appellant urges a number of reasons for rehearing in its motion. In the main, they were heretofore urged in the original brief. The appellant challenges a statement in the opinion that no error is saved on the failure of the court to find the facts and give its conclusions of law pertinent to the case separately stated. As we read the record, appellant, in its amended motion to set aside judgment and decree, assigned as one of the reasons therefor the failure of the court: "(a) To give its decision in writing and file the same with the clerk; (b) to find the fact and give its conclusions of law, stated separately."

The decree was vacated by the court on July 23, 1920 and on April 22, 1921, there was filed by the appellant a paper entitled, "Findings of fact and conclusions of law requested by plaintiff." We have read this paper carefully. In the main, it requests the court to give conclusions of law which represent the theory of the plaintiff, but which are inconsistent with the decision of the court. Such findings of fact as were requested were mixed with conclusions of law. No request was made of the court to perform the duty imposed by section 4197 of the Code to make such findings and give such conclusions of law pertinent to the case as the court saw it. Appellant seemed satisfied to rest its case upon the findings and conclusions it requested.

The court refused to make the findings and give the conclusions of law specially requested by the plaintiff, to which plaintiff excepted. Thereafter, on May 21, 1921, plaintiff was allowed certain exceptions nunc pro tunc as of time immediately preceding the reentry of the decree, but these exceptions were directed to the

findings and conclusions the court did make and did not challenge the failure of the court to perform the duties imposed by section 4197. The decrees contain in substance the following language as to the rights of such defendant:

"The court hereby concludes as a matter of law, and adjudges and decrees that————is the absolute owner in fee simple of all said tract and parcel of land last above described."

The court did not find the facts nor give the conclusions of law upon which the general conclusion above quoted was founded and was not requested to do so, and no exception was taken to such omission. It is also noted that such exceptions as were taken to the decree proposed to be reinstated were not exceptions to the decree as to any particular defendant except as to the Tittsworth Company and the Stern-Schloss Company. With respect to the others, the exception was alike as to all—that is, "to each of the conclusions of law that the defendants, to whom certain parcels of land are adjudged, is the owner thereof in fee simple and entitled to the possession therof." There is no exception to any specific decree on account of lack of findings of fact or the failure to give conclusions of law based on findings of fact as the basis for the decree.

We have no means of knowing definitely the grounds upon which the trial judge proceeded. The defeated party has not a right to a trial de novo in this court. A trial judge is frequently called upon to rule on matters and material facts which he sees transacted before him and of which he must take notice as substantial things in the case, but do not and cannot become a part of the record, and which the appellate court can have no knowledge of, unless perhaps through findings and conclusions. We should labor to affirm the judgment of the trial court unless it is clear that some fundamental right of a party has been invaded, and, as heretofore stated, when the record is deficient, every presumption should be indulged in favor of the correctness and regularity of the decision of the trial court. See

United States v. Biena, 8 N. M. 99, 42 P. 70, and cases cited supra.

While we do not know definitely the grounds upon which the trial court proceeded, it is apparent from the record and from the argument of counsel that the conveyances and documents introduced by defendants embracing 129 exhibits constituted an important element of the trial. The objections which were made to such conveyances are set forth in the assignments of error quoted in our original opinion. It being again urged with much force on the motion for rehearing that the court erred in admitting in evidence defendants' exhibits, it may be well to amplify to some degree the reasons stated in our original opinion supporting the view that the court committed no error in that respect, and that, if error was committed, it is not available to appellant.

Appellant says in paragraph 10 of its motion for rehearing:

"Both this court and the lower court erred in the determination that the appellant had failed to prove ownership of the land described in the complaint for want of evidence of the boundaries of the allotted lands or the common lands, for it had proved by the patent the exterior boundaries, and by the original grant shown in the pleadings the small allottments out of a total of 14,146.11 acres, overlooking that the burden fell on the defendants to show title to or through the allotments or according to the regulations of the statutes."

And in its brief on said motion, it is stated:

"Our court in the Williams Case [28 N. M. 146, 207 P. 576], held that title 'To allotted lands passed to the alottee.' In the case at bar, we atorn to that rule, and so contended throughout the case here and below. As to the allotted lands, 'If the corporation acquired any title at all under this decree or under the patent, it was solely as a naked trustee with no duties to perform, holding mere legal title for the benefit of the real owners,' to wit, those to whom parts of the grant had been lawfully segregated, but not so with regard to the common lands. The corporation therefore held title to the allotted or segregated lands as trustee for the benefit of the true owners, to wit, the persons to whom parcels had been segregated and allotted.
"In our case, by the act of confirmation, the entity called the town of Torreon was trustee for the allottees described

in the granting act and 'trustee of the community or common lands. That trusteeship by the community or town grant act was transferred to a board of trustees, and the loose fiduciary was made compact. But limitations were placed upon the trust and the powers of the trustees defined, in the said chapter 22 by the laws of March 18, 1907, and the law of March 15, 1913."

Elsewhere in its brief appellant says:

"The status of ownership in the plaintiffs was established not only by the patent offered in evidence, but by the pleadings of the defendants setting up the grant."

Paragraph (d) of the first assignment of error is as follows:

"That the making of said commissioner's or trustee's deeds was unauthorized on the theory of the distribution of the grant to heirs of the original grantees, because the said grant was a municipal trust, and the original grantees were trustees, the said grant being a town grant, which did not pass by descent or inheritance, **as to the common lands.**" (Blackface ours.)

In the amended reply, it is alleged:

"That during the years 1909 and 1910, one Ross Garcia, Francisco Zamoro, and Carlos Chaves were the board of trustees of the town of Torreon land grant, and that said board, without authority in law therefor, and without the payment of any money on the part of the defendants or any of them, and without any court proceeding of any kind whatsoever for the determination of the rights of the respective parties to the land included within the exterior limits of the said town of Torreon land grant, did wrongfully proceed to adjudicate that the said town of Torreon grant was a grant to the individual heirs of the petitioners for the grant, and proceeded to distribute among the parties whom said board had determined were entitled as heirs to a partition of the grant certain tracts of land to different parties theretofore adjudicated by the said board to have been heirs and entitled to the partition of the said land of the town of Torreon grant, and executed to the said parties certain writings purporting to convey to the said individuals portions or tracts of the common lands of the said town of Torreon grant. And that each and all of said conveyances so made by said board of trustees are null and void and of no effect and should by the court be canceled and annulled."

In the amended motion to set aside the judgment and decree it is said:

"That the court should have found that the said plaintiff was the special owner and administrator of the said tract of land, and should have taken notice of the charac-

ter of the grant, as municipal in character, and the status of the board of trustees, as public agents and fiduciaries."

In the exceptions allowed by the court appears the following:

"To the finding that the plaintiff has failed to prove ownership of the said grant, because it is contrary to the law and contrary to the proofs, in that, the plaintiff is the trustee of an express trust, and in that, the complaint, as amended to conform to the proof, alleges ownership of the said grant in the town of Torreon, as to which the plaintiff board was intrusted and invested with power to sue."

Subparagraph (i) of the first assignment of error is:

'That the plaintiff board is the successor in interest of the original grantees of the common lands and those not distributed under the original grant, as trustees of a municipality or municipal trust."

So it would seem from the contentions of appellant that the plaintiff is the trustee of the common lands and those not distributed under the original grant, and also that it is trustee for the real owners of the parts of the grant which had been segregated. As appellant does not stand upon the patent alone but declares that the status of the title is to be determined from the patent, the grant papers, and the confirmatory act, it seems that the situation is not different in effect from that in the Mesilla grant as described in Williams v. Lusk, 28 N. M. 146, 207 P. 576, supra, wherein the allotted lands were confirmed to the corporation "in trust for the persons to whom the same was allotted." In considering the finding and conclusion of the trial court that the plaintiff had "failed to prove the allegation of ownership of, and title to, the land and property described in the complaint," it must be remembered that the plaintiff's complaint alleged ownership in fee simple of the entire 14,146.11 acres, which would include the lands held in trust for the allottees. It seems to us that the interest which the trustee had was hardly a fee simple title.

"Ownership in fee simple implies something more than being the holder of the naked legal title to land. It implies an indefeasible legal title—the entire title and estate in land." United States v. Hyde (D. C.) 132 F. 545, 550.

It may be that in an appropriate proceeding the trustees might quiet title to the common lands, but it is not apparent how one merely a naked trustee with no duties to perform except to hold the mere legal title for the real owners may quiet title in him as against such real owners. It being conceded that within the exterior boundaries of the grant described in the complaint there were both common lands and allotted lands which had been segregated to the original petitioners and their children and successors, and the plaintiff claiming ownership in fee simple of the entire tract and plaintiff not offering to amend so as to take a decree affecting common lands only, we do not see how the court could do otherwise than dismiss the complaint. We will further consider the effect of the commissioners' ' deeds complained of. In our original opinion, without citation of authority, we gave effect to the recitals in such deeds that the commissioners of the Torreon grant constituted a corporation "by virtue of the act of the New Mexico Legislative Assembly, designated as title 22 of the Compiled Laws of 1897."

In Encyc. of Evidence, vol. 4, p. 182, it is stated:

"Recitals in deeds are prima facie evidence of the facts therein contained, against the parties thereto, and their privies."

The text-writer in the Encyc. of Evidence, 1917, Supp. "Deeds," p. 695, note 182-60, cites Cleveland v. Bateman, 21 N. M. 675, 158 P. 648. Ann. Cas. 1918E. 1011. as supporting the above text. We note in this case that we cited 4 Encyc. of Evidence, 183, and, while the direct question decided involved recitals contained in a deed executed by virtue of a power of sale contained in a mortgage, yet we agree with the text-writer that it supports the general principle laid down at page 172 quoted above. In that case we cited with approval 13 Cyc. 611. Said section corresponds substantially with section 220 of the article on deeds in 18 C. J., from which we quote:

"Recitals in deeds are usually considered, as concerns their effect as between parties and privies, with relation to the doctrine of estoppel, the principle being that a per-

son who admits the existence of a fact or deed either by reciting it in an instrument executed by him or by acting under such instrument will not be permitted to deny its existence. In some cases, however, the effect of recitals has been considered as a mere matter of evidence, without consideration of their effect as constituting an estoppel. In such cases they have been variously held to constitute evidence. of the facts stated, which, being uncontradicted, is to be taken as true, to be evidence generally without being conclusive of the facts, or to be taken as prima facie true, or obligatory as full proof of an authentic act, or raise a presumption of the truth as stated."

The deeds were not objected to on the trial on· the ground that further proof should be made of the facts recited, and no proof was offered to contradict it. The deeds were objected to on the ground of lack of authority in the party executing them, and that they were made by a party not having title, and appellant asks us to now consider further objections made in its brief. These later objections we may not consider.

If we give effect to the recital as evidence of the fact that the Torreon grant was a corporation by virtue of the act of the New Mexico Legislative Assembly designated as title 22 of the Compiled Laws of 1897, the inference is that the benefits of the provisions of that act were accepted in the manner therein designated. Section 2173 provides that the board of trustees of a corporation created under that act should have no control over the lands within the exterior boundaries of such grant, which were held or claimed in private ownership, except as thereinafter provided. Section 2174 provides that the trustees might institute suits in ejectment against any person holding, in possession or under claim of private ownership within the exterior boundaries of any such land grant, any tract, piece, or parcel of land. Section 2176 provides as follows:

"Any person or persons who have not an unquestioned paper title, holding or claiming in private ownership any tract or tracts, piece or pieces, parcel or parcels of land within the exterior boundaries of any such land grant or real estate may, within two years after the election of the first board of trustees of any corporation created under the provisions of this act, file with such board of trustees a petition in writing, setting forth a description of such land

according to an actual survey thereof, and the nature and source of his title, and praying that such land may be conveyed and confirmed to him by such board of trustees, and thereupon it shall be the duty of such board of trustees to examine such petition and the evidence offered in support thereof, and if the claim or claims of such person or persons shall, in the opinion of the majority of such board of trustees, be sustained by the evidence, such board of trustees shall immediately convey to such person or persons and his or her heirs and assigns, the land described in such petition, or so much thereof as is shown by the evidence to belong to such person or persons: Provided, however, That if such board of trustees shall fail or refuse for any reason to make such conveyance, such person or persons shall have the right to file in the district court of the proper county a bill of complaint in chancery against such corporation, praying that such board of trustees shall be compelled to convey and confirm to such person and his heirs and assigns the property so claimed and held in private ownership, and if upon the hearing of such cause it shall appear that such person or his grantors is entitled under the law, usage or custom of Spain, Mexico, the Territory of New Mexico or the United States, to such land, a decree shall be entered in such cause requiring such board of trustees to convey and confirm the same to such person, his heirs and assigns."

It seems apparent that the commissioners' deeds were issued pursuant to proceedings had under section 2176. The deeds recite that the grantee named therein had presented his application to the commissioners for a deed and title to a tract of land situated within the town grant of the town of Torreon, and that the commissioners had examined and considered such application and found that the applicant was a person interested in said grant and that the land described for which he had made application is for agricultural purposes. This last recital seems significant because the original grant was:

"Within these boundaries, I gave to each settler one hundred varas of land for cultivation, measured from east to west. In addition to the one hundred varas I assigned to them the building of the town, inclosures, and other common purposes, I gave to each settler a piece of land immediately adjoining the town for gardens, considering the same to be just, and having been requested to do so by the settlers, which request I complied with, as aforestated."

The recital in the deed that the land is for agricultural purposes indicates that it is not a part of the common lands. This is further indicated by the descriptions of

the lands in the deed; for instance, in Exhibit No. 2 the land conveyed or confirmed to the applicant is described as being bounded on the north by the common land; in Exhibit No. 1 the land conveyed or confirmed to the applicant is described as being bounded on the north by lands of Serafin Perez and common lands; in many of the other deeds the common lands are designated as one of the boundaries of the tract confirmed to the applicant. This would seem to indicate that the commissioners were not dealing with the common lands. Appellant asserts that the conveyances complained of conveyed common lands, but it has pointed to no evidence supporting the assertion.

Furthermore, in City of Socorro v. Cook, 24 N. M. 202, 173 P. 682, we held that:

"While the city council of Socorro, acting in its municipal capacity, had no authority to convey away its streets, plazas, or parks, it did have authority, as trustee, acting under said legislative authority, to determine the question as to the right of the claimant to the legal title to lands claimed, and to pass upon the question as to whether such lands so claimed had been dedicated to the public, and as to whether the city or the claimant was entitled to a conveyance of the legal title."

So in this case if the plaintiff grant commissioners, acting under the authority of section 2176, determined and adjudicated that defendants were entitled to certain lands in severalty and gave them "paper title" thereto, we are of the opinion that, presumptively, it investigated and determined that the land so confirmed to the defendants is not a part of the common lands.

This action of the commissioners was apparently acquiesced in in the majority of instances for about eight years and in some instances much longer. Lorenzo Zamora, a witness called by plaintiff, and being examined by plaintiff's attorney, testified that he had lived on the Torreon grant since infancy, over 50 years; that he had been a member of the board of trustees of the Torreon grant for a time—about 1910; he remembered that the patent to the grant was issued in 1908; was on the board when some of the land was partitioned to persons who claimed to be heirs of the original petitioners of.

the grant; proof was made before the board that petitioners were heirs of the original petitioners of the grant, and the board decided who were the heirs and to them was partitioned off the lands the board thought they were entitled to as such owners; didn't know of any sale being made by the board; didn't know of any election to ratify the action of the board in issuing deeds; they had their agreements in the meetings they had held. In response to questions by the court, witness testified that he was present at a meeting when they decided to issue the deeds to the heirs of the original petitioners; the people were notified in advance that the meeting was going to be held to divide the land. Question by the Court: "Who was present there? Answer:"Nearly all the people; there were about 60 or 70 men." There was introduced in edivence a portion of what purported to be rules and regulations of the board of commissioners of the town of Torreon. One of these rules and regulations translated into the record provides that said commissioners shall have the right to take care of all the property within said grant, all that portion of land that is now in common, and they also shall have the right to divide and deliver to the owners and heirs the land they should have according to their right. A notation on the corporation record of this rule is: "Approved and adopted by the people at a public meeting held on this the 4th day of June, A. D. 1913."

From this ic appears that after the deeds that had been issued up to that time there remained common lands; the exact extent or location of which is not shown. Also, that the people of the town acquiesced in this method to "divide and deliver to the owners and heirs the land that they should have according to their rights."

An examination of the statutes applying to community grants shows that section 2176, C. L. 1897, was not repealed by chapter 42, Laws 1907. In addition to what was pointed out in this respect in the original opinion, we have noted chapter 3 of the Session Laws of 1917,

being, ''An act relating to corporations organized under chapter 86 of the laws of 1891, or chapter 54 of the Laws of 1897, for the management and control of community land grants.'' This chapter is in the main a re-enactment of chapter 54 of the Laws of 1897, of which section 2176 was a part and which section was omitted from the act of 1917, the provisions of the 1897 act with reference to the sale, mortgage, and lease of the common lands being substantially the same in the act of 1917 as in the act of 1897, neither enactment requiring the approval of the court and the 1897 act not requiring an election, the 1917 act requiring an election only in event the action of the board in making the sale, mortgage, or lease is protested within 30 days, after action taken by the board.

The exercise of the power reposed in the authorities of the land grant by virtue of said section 2176 seems to have been in accord with the general policy recognized by the Legislature (see Code 1915, art. 2, c. 22), the language employed being variously:

"To recognize and confirm by deed of conveyance all bona fide adverse holdings of real estate within the grant." Act of February 23, 1905.

"Said board is hereby vested with full power to segregate and convey in severalty to individuals or aggregations of individuals parcels of land within said grant that have been claimed and cultivated by them prior to March 9, 1905, or by those under whom they claim title; also to determine the amount to which any individual claimant or owner of an undivided interest in said grant is entitled in severalty, subject to appeal to the district court by any claimant," etc. Act of March 3, 1909.

"Said commissioners have the right and authority to make, give and execute deeds and titles for lands within said grant in favor of the persons interested in said grant for the purpose of agriculture." Act of March 18, 1907.

"To recognize and confirm by deed of conveyance all bona fide adverse holdings of real esatte on said grant." Act of March 17, 1903.

From all of the foregoing it follows that appellant's motion for a rehearing should be denied, and it is so ordered.

PARKER, C. J., and WATSON, J., concur.