481 P.2d 702

**BOARD OF TRUSTEES OF the TOWN OF LAS VEGAS (Administering the Las Vegas Land Grant) and Donaciano Marrujo, Plaintiffs- Appellees,**

**v.**

**Elauterio MONTANO et al., Defendants-Appellants.**

**No. 9020.**

Supreme Court of New Mexico.

Feb. 15, 1971.

Donald A. Martinez, Las Vegas, for defendants-appellants.

Roberto L. Armijo, Las Vegas, for plaintiffs-appellees.

## OPINION

OMAN, Justice.

Except for Defendant E. R. Zacker, defendants have appealed from a judgment declaring and establishing a vested right in plaintiffs to use and enjoy, for purposes of ingress and egress to and from their respective lands, a presently existing road across the lands of the respective defendants. As a part of their said right of ingress and egress over and along said road for all lawful purposes, plaintiffs were adjudged and decreed to have the right to make necessary repairs to said road, and defendants were restrained and enjoined from interfering with or hindering plaintiffs in their use and enjoyment of the road. We affirm.

No question is raised concerning the correctness of the trial court's findings that all the lands over which the road passes lie within the Las Vegas Grant, a Mexican Land Grant, confirmed by the United States Congress on June 21, 1860, as Private Land Claim No. 20; a patent, in the nature of a relinquishment or quitclaim, was issued by the United States on June 27, 1903, conveying and granting the lands in the Grant to the Town of Las Vegas; plaintiff Marrujo acquired title to his lands from plaintiff Board of Trustees of the Town of Las Vegas, as administrator of the Las Vegas Grant [the instrument of conveyance was a Quitclaim Deed dated March 12, 1966]; and the Las Vegas Grant is managed by the said Board of Trustees acting under the jurisdiction and control of the District Court of San Miguel County.

By their first point relied upon for reversal, appellants contend the Laws of New Mexico 1903, Ch. 47, and Laws of N.M. 1909, Ch. 103 [§§ 8–6–1 through 13, N.M. S.A.1953 (Repl.Vol. 2, 1966)] constitute special legislation in violation of the Springer Act [July 30, 1886, Ch. 818, § 1, 24 Stat. 170, 48 U.S.C. § 1471] and Art. IV, § 24, Constitution of New Mexico.

Appellants raised this question in the trial court by motion which was overruled. The provisions of the Springer Act relied upon are as follows:

"The legislatures of the Territories of the United States now or hereafter to be organized shall not pass local or special laws in any of the following enumerated cases, that is to say:

" * * *

"Regulating county and township affairs.

" * * *

"Incorporating cities, towns or villages, or changing or amending the charter of any town, city or village.

" * * *

"The sale or mortgage of real estate belonging to minors or others under disability.

" * * *

"*In all other cases where a general law can be made applicable, no special law shall be enacted in any of the Territories of the United States by the Territorial legislatures thereof.*" (Emphasis added)

Article XXII, § 4, Constitution of New Mexico, provides in part:

"All laws of the territory of New Mexico in force at the time of its admission into the Union as a state, not inconsistent with this Constitution, shall be and remain in force as the laws of the state until they expire by their own limitation, or are altered or repealed; * *."

The provisions of Art. IV, § 24, Constitution of New Mexico, relied upon by appellants, are as follows:

"The legislature shall not pass local or special laws in any of the following cases: Regulating county, precinct or district affairs; * * * the sale or mortgaging of real estate of minors or others under disability; * * * incorporating cities, towns or villages, or changing or amending the charter of any city, town or village; * * *. *In every other case where a general law can be made applicable, no special law shall be enacted.*" (Emphasis added)

Appellants recognize there are a number of legislative enactments pertaining to particular community land grants within New Mexico, which differ considerably in their provisions relative to the selection and makeup of the governing, or managing, bodies of the respective grants, and, also, as to the powers, and the manner of the exercise thereof, which these governing bodies have over the control, management and disposition of the lands within these respective grants. See Ch. 8, Arts. 3 through 10, inclusive, N.M.S.A.1953 (Repl. Vol. 2, 1966).

However, appellants urge that general laws, applicable to all community land grants within New Mexico, have been enacted. They cite Laws of 1891, Ch. 86, and Laws of 1897, Ch. 54, repealed by Laws of 1917, Ch. 3, § 19; Laws of 1907, Ch. 42, now appearing, as amended, in Ch. 8, Art. 1, N.M.S.A.1953 (Repl. Vol. 2, 1966).

The 1917 Act, which repealed and replaced the 1891 and 1897 Acts, and which now appears in its amended form as Ch. 8, Art. 2, N.M.S.A.1953 (Repl. Vol. 2, 1966), does not purport to have general application to all community land grants in New Mexico, but only to those organized and incorporated under the provisions of the 1891 and 1897 Acts.

In § 2 of the 1907 Law, now appearing as § 8–1–2, N.M.S.A.1953 (Repl. Vol. 2, 1966), it is provided:

"This act [now article] * * * shall not apply to any land grant which is now managed or controlled in any manner, other than herein provided, by virtue of any general or special act."

In Merrifield v. Buckner, 41 N.M. 442, 70 P.2d 896 (1937) it was held the 1907 enactment was not applicable to the Chilili Grant which was subject to prior legislative provisions as to the management thereof [See Ch. 8, Art. 4, N.M.S.A.1953 (Repl. Vol. 2, 1966)], and that the 1907 Act was intended to apply only to grants for which no legislative provisions had been theretofore made for their management. As stated above, legislative provisions had been made by Laws of 1903, Ch. 47, for the management of the Las Vegas Grant, and § 10 of this 1903 Act ratified any and all prior appointments by the District Court of San Miguel County of trustees for the management of the grant and any and all other acts and things done and performed by the court in assuming jurisdiction over the management, control and administration of the grant.

Nevertheless, appellants urge that "The community land grants in New Mexico are all of the same kith, kind, class and nature. * * *"; a uniform system of government, control or management over their affairs should have been established by the Legislature; the 1891, 1897 and 1907 enactments demonstrate their susceptibility to a general law establishing a uniform system of governing, controlling or managing their affairs; and the legislative enactments pertaining only to specific grants, and particularly those pertaining to the Las Vegas Grant, which are here in question [Laws 1903, Ch. 47, and Laws 1909, Ch. 103, now appearing, as amended, in Ch. 8, Art. 6, N.M.S.A.1953 (Repl. Vol. 2, 1966)], constitute special legislation violative of the prohibitions contained in the above quoted provisions of the Springer Act and of Art. IV, § 24, Constitution of New Mexico.

Although there are unquestionably basic likenesses in the nature of all community land grants in New Mexico, there

are also differences, such as their geographic locations, the times of their origin, the laws and governments under which they were created, the forms of government and administration under which they developed and were controlled, etc. The fact that they may be susceptible to a uniform system of government, management or control does not require legislative enactment of a general law in this regard applicable to all community grants.

■ There is a close correspondence in meaning and purpose between the principles underlying the equal protection clauses of the Fourteenth Amendment to the Constitution of the United States and of Art. II, § 7, Constitution of New Mexico, and the general versus special law provisions of the Springer Act, supra, and of Art. IV, § 24, Constitution of New Mexico, supra. See County of Los Angeles v. Southern Cal. Tel. Co., 32 Cal.2d 378, 196 P.2d 773 (1948); Davy v. McNeill, 31 N.M. 7, 240 P. 482 (1925); Bargain City U.S.A., Inc. v. Dilworth, 407 Pa. 129, 179 A.2d 439 (1962); State ex rel. Lee v. Gates, 149 W.Va. 421, 141 S.E.2d 369 (1965); In Re Estate of Carlson, 9 Cal.App.3d 479, 88 Cal.Rptr. 229 (1970). The fact that the Legislature has enacted laws applicable to only one grant, and has thus classified some of the grants differently, is entitled to great weight. Only if a statutory classification is so devoid of reason to support it, as to amount to mere caprice, will it be stricken down. City of Raton v. Sproule, 78 N.M. 138, 429 P.2d 336 (1967). If any state of facts can be reasonably conceived which will sustain a classification, there is a presumption that such facts exist. State v. Persinger, 62 Wash.2d 362, 382 P.2d 497 (1963). Every presumption is to be indulged in favor of the validity and regularity of legislative enactments, and they will not be declared unconstitutional unless the court is satisfied beyond all reasonable doubt that the Legislature went outside the Constitution in enacting them. City of Raton v. Sproule, supra.

Much of the legislation concerning the governing, or management, of the affairs of community grants, as shown by the legislative enactments referred to above, has been concerned with particular grants and the different systems by which they have been governed, or managed. There have been a number of decisions by this and other courts declaring and establishing rights in grant lands arising out of and dependent upon the management, control and disposition of these lands under these diverse systems established by special legislative acts. See for example, City of Socorro v. Cook, 24 N.M. 202, 173 P. 682 (1918); Williams v. Lusk, et ux., 28 N.M. 146, 207 P. 576 (1922); Merrifield v. Buckner, supra. See also Board of Trustees of Town of Torreon Land Grant v. Garcia et al., 32 N.M. 124, 252 P. 478 (1925).

■ The Las Vegas Grant has been held not to be a town, city or other municipal corporation within the contemplation of Art. 8, § 3, Constitution of New Mexico, and " * * * is not of the nature of an agency or instrumentality of the state government, as are the other municipal corporations named." State v. Bd. of Trustees of Town of Las Vegas, 28 N.M. 237, 210 P. 101 (1922). We are of the opinion that this holding, as to the Las Vegas Grant, for tax purposes, is equally applicable within the contemplation of the above quoted provisions of the Springer Act and Art. IV, § 24, Constitution of New Mexico. These community land grants, although not corporations, are in the nature of quasi municipal corporations. Bibo v. Town of Cubero Land Grant, 65 N.M. 103, 332 P.2d 1020 (1958). The governing body of a grant is a creature of the Legislature, and has only such powers as are conferred by the particular act creating it. Its principal function is to hold title to and manage the common lands of the grant. Merrifield v. Buckner, supra.

■ In view of the difference in the nature and origin of the different community land grants; in view of the long legislative

history—dating back as far as 1876—of enactments relating to the control, or management, of the lands of specific grants; in view of the fact that there is some discretion in the Legislature to determine in which cases special laws should be passed [Scarbrough v. Wooten, 23 N.M. 616, 170 P. 743 (1918)]; and in view of the presumptions indulged in favor of the validity of legislation, we are of the opinion that the prohibitions against special legislation as contained in the Springer Act, supra, and in Art. IV, § 24, Constitution of New Mexico, supra, are not applicable to enactments relating to the governing or managing bodies of specific community land grants, or to the manner in which these bodies exercise their powers of control, management and disposition over grant lands.

Under their second point, appellants first contend seven of the trial court's findings are not supported by substantial evidence, and, therefore, the conclusions based thereon, must fall. On appeal only that evidence and the reasonable inferences to be drawn therefrom which support the findings will be considered. This evidence and these inferences must be viewed in their most favorable light in support of the findings. Kerr v. Schwartz, 82 N.M. 63, 475 P.2d 457 (1970).

The record has been examined in its entirety and the consensus is that the challenged findings are supported by substantial evidence. It follows that the trial court's conclusions, which properly follow from these findings and which conclusions have not been challenged except for the claimed lack of substantial support in the evidence for the findings upon which the conclusions are based, must be sustained.

In the second portion of their Point II, appellants contend "the Trial Court Erred in Overruling [Their] Motion to Dismiss at the Close of Plaintiffs' Case in Chief on the Grounds that Plaintiffs had Failed to Establish a Prima Facie Case."

Unquestionably, the complaint was predicated on the position that the road was a "public road," and the evidence failed to establish a public road. However, appellants did not elect to stand on their motion, but proceeded with their case after the denial thereof. They thereby waived any error committed in the denial of the motion. A. & N. Club v. Great American Insurance Company, 404 F.2d 100 (6th Cir. 1968). Thereafter the case resolved itself into a question of the rights of plaintiffs to ingress to, and egress from, their lands over the existing road across the lands of the respective defendants. We have already decided that the findings as to the existence and use of this road for over thirty years, as well as the necessity for its use by plaintiffs, are supported by substantial evidence.

By their final point, appellants claim error on the part of the trial court " * * * In Refusing to Dismiss the Board of Trustees From the Case as a Party Plaintiff Because it Had Not Consented to Being a Party and Did Not Join the Plaintiff Marrujo in Seeking the Relief Sought by the Complaint Herein." They rely upon § 18–1–11, N.M.S.A.1953 (Repl.Vol. 4, 1970), which provides:

"18–1–11. *Proof of authority.*—The court may, on motion of either party and on showing of reasonable grounds thereof, require the attorney for the adverse party or for any one of the several adverse parties to produce or prove by his oath or otherwise the authority under which he appears and until he does so, may stay all proceedings by him on behalf of the parties for whom he assumes to appear."

The attorney representing the Board of Trustees had represented it for about eighteen years; the complaint was filed on June 13, 1967; answer thereto was filed on July 13, 1967; the motion attacking the attorney's authority was filed on March 18, 1969; and arguments on the motion were heard and the case tried on April 11, 1969. No action was or has ever been taken at any time by the Board of Trustees

to renounce or rescind any action taken by its attorney on its behalf in this suit.

No minutes of the board authorizing the suit were produced. Between the time of the filing of the suit and the date of trial, the membership of the Board of Trustees had changed, and one of the members of the board as of the date of trial testified that to his knowledge the Board of Trustees had given no authority to be made a party plaintiff to the suit.

Under these circumstances, we are of the opinion the trial court acted within its discretion in declining to require the attorney to produce further proof of his authority to represent the Board of Trustees.

The judgment should be affirmed.

It is so ordered.

COMPTON, C. J., and TACKETT J., concur.