ANDREW ALBRIGHT, DEFENDANT IN ERROR, v. JAMES CORTRIGHT, PLAINTIFF IN ERROR.

Submitted December 11, 1899—Decided March 5, 1900.

1. The plaintiff claimed to own land covered by Swartswood pond, a body of non-tidal water, and notified the defendant not to fish in it. The defendant, disregarding the notice, fished from a boat on two different days, in water that covered land claimed by the plaintiff, who thereupon brought his action. The declaration alleged possession and title by deed in the plaintiff and acts of trespass by the defendant in disregard of notice. The defendant filed pleas in both general and specific denial of the declaration, and a further special plea setting up in bar of the action two independent defences—*first*, that the public had been accustomed for sixty years to fish in the pond, and that therefore the defendant, as one of the public, could do so of right; and *secondly*, that the pond had been stocked with fish by the fish commissioners of the State of New Jersey for twenty-five years, and that therefore the defendant, as one of the public, could fish there of right. On the trial the plaintiff proved the case laid in his declaration and rested. The defendant offered to prove that the public had continuously fished in the pond for sixty years, which offer was overruled and exception taken. The defendant also called a witness who testified to the stocking of the pond by public authority. This evidence was then stricken out, whereupon the defendant made a formal offer to prove the allegations of his plea in this particular, which offer was overruled and exception taken. The trial judge thereupon directed the jury to find a verdict of six cents for the plaintiff, to which direction an exception was taken. Error was assigned on these exceptions.

As to the first special defence it was *held*—

1. That since the defendant had no license from the plaintiff, whatever right he could have had in plaintiff's close must have been by way of easement, custom or prescription.

2. That the right claimed was not an easement, which is a privilege without profit.

3. That the defendant could not claim such right by custom—(*a*) because a common law custom, as distinguished from a usage of trade, must be immemorial, which in New Jersey is impossible; (*b*) because a custom laid in the public is bad for universality; and (*c*) because a right to take profit from the land of another cannot be acquired by custom.

4. That the defendant, merely as one of the public, could not claim such right by prescription because the public cannot prescribe.

As to the second special defence it was *held*—

1. That the evidence that was stricken out and excluded, if it had been received, would have proved, in the view most favorable to the defendant, only that the State of New Jersey had placed on private property certain fish that the public might catch if members of the public could lawfully reach them.

2. That the defendant, as one of the public, could not lawfully reach these fish against the prohibition of the plaintiff while they remained in his close unless either the common or the statute law conferred such right.

3. That the common law gave no such right because there is no general rule authorizing a member of the community, merely as such, to invade private property in order to reach something that is devoted to the public.

4. That the acts concerning fish and game gave no such right, for they do not manifest a legislative intent to legalize what would otherwise be trespasses in pursuit of private advantage, and if they did manifest such intent would be to that extent invalid.

2. *Held,* that the plaintiff was entitled to the direction that the jury give him a verdict for nominal damages.

On error to the Sussex Circuit Court.

For the plaintiff in error, *Martin Rosencrans.*

For the defendant in error, *Thomas M. Kays* and *Thomas Kays.*

The opinion of the court was delivered by

ADAMS, J.  The declaration is in tort, and seeks damages from the defendant for breaking and entering the close of the plaintiff, being a tract of land covered with water in Stillwater township, in Sussex county, known as Swartswood pond, and for fishing and catching fish therein, in disregard of a notice by the plaintiff not to trespass on his land, and especially not to fish in said pond.

The gist of the defence is found in the following extract from the fifth plea, upon which issue has been joined: "That the said Swartswood pond has been stocked with fish by the fish commissioners of the State of New Jersey for twenty-five years, and that the fish therein belong to the public, and that the public for sixty years last past have entered the said close

and openly, adversely, continuously, uninterruptedly and with-out molestation used the said close and waters of said Swarts-wood pond for the purpose of fishing for fish therein, and catching and taking fish therefrom, and that the defendant, as one of the public, has a right by prescription in and to the said close and the said Swartswood pond, and had at the time mentioned in the plaintiff's declaration a prescriptive right of profit in the said lands covered with water, and said Swarts-wood pond, being the same described in the plaintiff's declara-tion, and to fish into the said waters of said Swartswood pond, and to take, catch and carry fish therefrom without any hin-drance or molestation of the said plaintiff."

At the trial the plaintiff proved both possession and title by deed in himself, before and at the time of the acts com-plained of, and that the defendant had fished in said pond, though notified by the plaintiff not to do so. The defendant then offered to prove that the pond had been stocked by the State of New Jersey about twenty-five years before, and that the public had continuously fished there for sixty years, which offers were denied, and a verdict for six cents was directed and rendered for the plaintiff. The questions presented by the exceptions are whether one who fishes in non-tidal water that covers land of another, though forbidden to do so by the owner of such land, can justify either by the long-continued usage of the public, or because the water has been stocked by the State of New Jersey. These defences, though blended in the special plea, are logically distinct.

Leaving out of view certain relations that are plainly for-eign to this case, it may be said that whatever right, provable by user, the defendant could have had in the plaintiff's land must have been by way of easement, custom or prescription. The right that the defendant asserted was not an easement, which is a privilege without profit. Nor could he, as one of the public, acquire this profitable right by custom. In the first place, a common law custom, as distinguished from a usage of trade, must be immemorial, and this, in New Jersey, is impossible. *Ackerman* v. *Shelp*, 3 *Halst.* 125 ; *Allen* v.

*Stevens*, 5 *Dutcher* 509 ; *Ocean Beach Association* v. *Brinley*, 7 *Stew. Eq.* 438. In the next place, the right claimed is too comprehensive to be good by way of custom. "Custom is unwritten law established by common consent and uniform practice from time immemorial, and is local, having respect to the inhabitants of a particular place or district." 2 *Greenl. Evid.*, § 248. This custom is laid in the whole public. A custom so general would be indistinguishable from the law itself, so that the question in such a case really is not whether the usage is customary, but whether it is lawful. *Fitch* v. *Rawling*, 2 *H. Bl.* 393. Finally, a profitable right in land of another cannot be gained by custom, but only by prescription. *Cobb* v. *Davenport*, 3 *Vroom* 369 ; *S. C.*, 4 *Id.* 223.

In view, no doubt, of these considerations the special plea alleges "a prescriptive right" in the defendant to which he is entitled "as one of the public." This proposition is unsound, because it conflicts with the rule that the public cannot prescribe. A right that a man claims merely as one of the public does not lie in grant, and therefore not in prescription, which presupposes a lost grant, and so can embrace only things that are grantable. "A prescription," says Lord Coke, "always is alleged in the person." *Gateward's Case*, 6 *Co.* 60 *b.* "Prescription," says Sir William Blackstone, "is merely a *personal* usage : as that Sempronius and his ancestors, or those whose estate he hath, have used time out of mind to have such an advantage or privilege." 2 *Bl. Com.* 262. Mr. Greenleaf says : "Prescription is a personal right, belonging to one or a few persons by particular designation, as, for example, the owners of a certain parcel of land." 2 *Greenl. Evid.*, § 248. To use a technical phrase, the claimant, in such a case, must prescribe in a *que* estate—that is, under or in the right of some other person or persons whose estate has come to him.

That a right to take profit from another's land cannot arise by custom was decided as early as *Gateward's Case, supra.* Lord Kenyon, in *Grimstead* v. *Marlowe*, 4 *T. R.* 717, said that the law had been so settled ever since the time of Gate-

ward's case. This is still the law of England. In *Goodman* v. *Mayor of Saltash,* 7 *App. Cas.* 633, 648, Lord Cairns says : " I think it to be clear law that while you may by custom claim an easement to be enjoyed over the land of another, you cannot by custom claim a profit *a prendre in alieno solo.* I think it also to be clear law that you cannot claim by prescription anything which could not have a lawful beginning. And I think it also clear that a fluctuating and uncertain body cannot claim a profit *a prendre in alieno solo,* and indeed cannot be the grantee of either a several fishery or of any other kind of real property." Two recent cases are *Blount* v. *Layard,* reported in a note to *L. R.,* 2 *Ch. Div.* 681 (1891), and *Smith* v. *Andrews, Id.* 678 (1891). In the case first mentioned, Lord Justice Bowen, speaking of a part of the Thames that is above the reach of the tide, said : "Although the public have been in the habit as long as we can recollect, and as long as our fathers can recollect, of fishing in the Thames, the public have no right to fish there—I mean they have no right as members of the public to fish there. · That is certain law. Of course, they may fish by the license of the lord or the owner of a particular part of the bed of the river, or they may fish by the indulgence or owing to the carelessness or good nature of the person who is entitled to the soil, but right to fish themselves as the public they have none."

The following extract is from the opinion by Mr. Justice North, in Smith *v.* Andrews : " The idea is sometimes entertained that the right to pass along a public navigable river carries with it the right to fish in it, but so far as regards non-tidal rivers this is not so. No lawyer could take that view. Persons using a navigable highway no more acquire thereby a right to fish there than persons passing along a public highway on land acquire a right to shoot upon it. Some few passages may be found in the books in which judges are reported to have said that subjects have a right to fish in navigable rivers, just as in the sea ; but on investigation it always will be found that they are referring to navigable rivers where the tide ebbs and flows and nothing else. * * *

But even if the public had in fact fished in this water with less interference or interruption than was actually the case, it would not supply any defence to the defendant in the present action. Any acquisition of right arising from long continued use must be founded upon either custom, prescription or lost grant. It is well settled that the public cannot have any right to fish founded upon custom, however long the practice has continued. Upon this point it is not necessary to refer to various well-known and often-cited authorities. * * * Then can any such right be acquired by prescription? It is clear settled law that it cannot. * * * Lastly, as to any presumption of a lost grant, the observations of Mr. Justice Byles, in *Attorney-General* v. *Mathias*, 4 *Kay & J.* 579, are conclusive. There can be no presumption of a lost grant with respect to matter which cannot be the subject of prescription." To the same effect is *Constable* v. *Nicholson*, 32 *Law Jour. C. P.* 240, reported also with full notes in 8 *Eng. Rul. Cas.* 337. There are many American cases declaring the law to be as it is above stated, among which are *Waters* v. *Lilley*, 4 *Pick.* 145; *Pearsall* v. *Post*, 20 *Wend.* 111, 124, 125, and *Perley* v. *Langley*, 7 *N. H.* 233. The English law allows to the public no greater privileges in fresh-water ponds and lakes than in fresh-water rivers. This is evident from the cases collected in *Gould Wat.*, §§ 79, 81.

The leading case in this state is *Cobb* v. *Davenport*, 3 *Vroom* 369, decided by the Supreme Court on facts much like those now before us. The plaintiff claimed to own a natural, non-tidal lake in Morris county called Green pond. The action was trespass for breaking his close and fishing in water that covered his land. The defendant pleaded the general issue, denying that the plaintiff had an exclusive right to fish in said pond, set up the statute of limitations and license from the plaintiff and also alleged a prescriptive right to fish by virtue of certain grants to persons under whom the defendant claimed. A verdict was rendered for the defendant, which was set aside on rule to show cause. The Supreme Court held that the plaintiff had proved his title and that the defence,

by way of limitation, license and prescription, was not sustained. Among the legal conclusions to be drawn from this case are these—that the soil under a fresh-water pond in New Jersey is not in the state but is in private ownership; that the exclusive right of fishing therein is *prima facie* in the owner of the soil but may be acquired separate from the ownership of the soil; that the right of the public to fish in private waters cannot be claimed by custom or established by proof of customary right, and that such right can be acquired only by grant or prescription and must be prescribed for in a *que* estate. The following extract from the opinion will show both how strong was the proof of user in that case and how closely the facts resemble those now in view:

"The evidence in this case shows that the public in general, for a period of forty years and upwards, were accustomed to fish in the pond in question without hindrance or molestation, and that permission to do so was neither asked nor granted; that the fishery was never used by its owners, either before or since the plaintiff acquired title, as a source of pecuniary profit, but that every one, without regard to residence or tenure of lands, was permitted to fish in all parts of the pond at will and whenever his inclination prompted him to do so, and that this privilege was exercised under a prevalent impression that the fishery, in the language of one of the witnesses, was a free fishery. And it is a noticeable fact in the case that although the witnesses who fished in the pond testify that they did so under a conviction of their right, yet no one claimed a right personal to himself or other than such as it was thought belonged to the public in general. This evidence tends merely to establish a customary right in all the inhabitants and frequenters in that locality to fish in these waters if a right to fish could be established by proof of custom. But the right of fishing being a profit *a prendre* in another's soil, as distinguished from an easement, cannot be claimed by custom but must be prescribed for in a *que* estate. The defendant cannot justify under a custom, nor will proof of a custom sustain a plea of prescriptive right

because two rights, though they may co-exist in the same land, are of a completely different nature."

The defendant subsequently applied for leave to file an additional plea justifying the alleged trespass on the ground that the fishery had become public by dedication. Leave was granted in order that the question might appear on the record, and the plea was then, after argument, struck out. The opinion is reported in 4 *Vroom* 223. The conclusions expressed by the court are that the right to fish and take fish *in alieno solo* is not an easement but is a profit *a prendre* and can be acquired only by grant or prescription, which must be pleaded; that such a right, so universal and unqualified as to subsist in the entire public, cannot be gained by custom or prescription, and that the doctrine of dedication to public uses does not embrace a claim of this character. The pleadings in the case now under consideration do not present the defence of dedication. The case of Cobb *v.* Davenport has been cited with approval by this court in *Attorney-General* v. *Delaware and Bound Brook Railroad Co.*, 12 *C. E. Gr.* 631 (at *p.* 639), and in Attorney-General *v.* City of Paterson, decided at the present term, the exact point of the citation being, in each case, the tidal distinction between public and private waters.

It is plain from an examination of the authorities above referred to, and of many others that might be mentioned if it were worth while to multiply citations, that the Supreme Court, in Cobb *v.* Davenport, declared and enforced the ancient and established law. There is nothing in our local conditions which closely resemble those of England, or in the requirements of modern life that calls for the adoption of a different rule. It may be true that there is here, as there seems to be in England, a common misapprehension on this subject, and that a good deal of fishing that is thought to be of right is only permissive. But it is not desirable to change an important rule of law merely because it is sometimes misunderstood. In country life a multitude of acts are habitually committed that are technically trespasses. Persons walk,

catch fish, pick berries and gather nuts *in alieno solo,* without strict right.   Good-natured owners tolerate these practices until they become annoying or injurious, and then put a stop to them.   Little practical inconvenience results from this state of things, which the courts may well leave to regulate itself.   Our conclusion, on this branch of the case, is that the trial judge did not err in excluding proof that the public had habitually fished in Swartswood pond.

The other ground of defence is that the state, some twenty-five years ago, stocked this pond with land-locked salmon, and that therefore the defendant, as one of the public, might fish in it.   Inasmuch as evidence on this point was struck out, and the subsequent offer was not full, the facts relied on by the defendant do not appear as plainly as they otherwise might do.   The waters of Swartswood pond, of course, escape and find their way to the ocean.   It is not clear whether fish also may escape, or can enter from without, or even that salmon are now in the pond, or whether other kinds of fish are there.   It is not distinctly shown that the defendant desired to catch salmon.   He fished on two days and seems to have caught nothing.   It is fair to assume, in favor of the defendant, that there were salmon in the pond, either placed there originally by the State of New Jersey or the successors of such ; that they were desirable, and that the defendant would have been glad to catch them, and was at least attempting to do so.   The fish thus introduced into this body of water must have been, at the dates of the alleged trespasses, the property of the plaintiff, or of the state, or of the public, meaning by the latter phrase that the public were at liberty to catch them where they lawfully might.   If these fish were the property of the plaintiff, the second defence fails.   The defendant sometimes calls them the property of the state, and sometimes the property of the public.   If they were the property of the state, this defence fails, and the defendant could no more take them than if they were still in the hatchery. The third alternative is that they were for the public, and this is probably what is meant when they are called the prop-

erty of the state.   The question then is whether, on this branch of the case, the defendant can justify his acts by force either of common or statute law.   He cannot do so by common law, for it is not true that a member of the community, merely as such, may enter the land of another in order to get at something that is devoted to the public.   For example, highways and parks are devoted to the public, but one may not, therefore, cross another man's farm in order to reach them.   Nor can the defendant prevail by virtue of the acts concerning fish and game, for the legislature cannot confer upon the public a general license to commit trespasses, and if it could do so no such intent will be implied, and the statutes do not express it.

The declared policy of the State of New Jersey is to promote and protect certain forms of animal life in the interest of sport and to increase the supply of food.   To these ends non-tidal waters have been stocked with fish, and woods and fields may be hereafter stocked with game.   It may happen that gunners will then claim that they can cross lands against the protest of the owners, and will allege as their justification, in close analogy to this defence, that the birds which they seek were originally impressed by state authority with a special public character.   No theory can be sound that would warrant such an invasion of private property in pursuit of private advantage.   The trial judge did not err in overruling the second defence.

The plaintiff was entitled to the direction that the jury find a verdict in his favor for nominal damages.   The judgment is affirmed.

*For affirmance*—DEPUE, VAN SYCKEL, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH.   12.

*For reversal*—None.