105 P.2d 744

## H. N. D. LAND CO. v. SUAZO et al. (ABEYTA et al., Interveners).

No. 4548.

Supreme Court of New Mexico.

Sept. 18, 1940.

Robert Hoath LaFollette, of Albuquerque, for appellants.

Seth & Montgomery and Gilbert & Hamilton, all of Santa Fe, for appellee.

MABRY, Justice.

Complaint was filed seeking to quiet title to certain lands known as El Paso Ranch, located in Rio Arriba county, within the Tierra Amarillo Grant. A large number of persons were made defendants and others became parties by intervention, title to the lands was quieted in plaintiff and defendants and intervenors appeal.

The lands involved in this case are the unallotted, or common lands within the exterior boundaries of the said grant. Several assignments of error are presented. We shall notice only two, either of which is determinative of the appeal.

This grant was made by the Mexican government on July 20th, 1832, "unto Manuel Martinez, together with eight sons and some others who voluntarily desire to accompany him." The parties do not agree whether this was, at its inception, a community grant, made under provision of the Mexican Colonization Laws of 1824, or a conventional private grant to Manuel Martinez. It becomes unimportant whether the original grant be classified as one or the other under our view of the case, as will be hereinafter explained.

This grant contained 594,515.55 acres, a part of which lay in what is now the state of Colorado. The surveyor-general of New Mexico, acting under authority of the congressional act of July 22, 1854, 10 Stat. 308, reported favorably upon the grant as being made by the Mexican government to the said Manuel Martinez, and congress ap-

proved and confirmed the grant to Francisco Martinez, heir of the original grantee, by the act of June 21st 1860, 12 Stat. 71. This grant was surveyed in July, 1876, and thereafter and on February 21, 1881, patent thereto was issued to the said Francisco Martinez. The patent conveying was in the conventional form and like other patents issued under this congressional authority. The patent contained the ordinary and familiar clause found in all other like patents of the time, to which appellants attach much significance. This clause reads: "This patent shall be construed as a quitclaim or relinquishment upon the part of the United States and shall not affect the adverse rights of any person or persons whosoever."

Appellants also rely upon the language used by the surveyor-general in recommending to Congress the confirmation of the grant, which shows the action of the surveyor-general to have been taken upon the original documents which he had examined. He recites that this case is one "governed by the Treaty of Guadalupe Hidalgo and the decisions of the Supreme court of the United States in the case of J. C. Fremont v. United States, etc. [17 How. 542, 15 L.Ed. 241];" and points out that those originally placed in possession were required to leave the pastures, watering places and roads free "according to the custom existing in every settlement." He concludes that this is a good and valid grant and should be confirmed to Francisco Martinez, heir of the original and present claimant.

Appellants would impress upon this language of the surveyor-general much force, since it is assumed that he was reciting, for the benefit of Congress, the character of, and limitation upon, the title Congress was being asked to confirm in the applicant. This becomes a rather unimportant matter when Congress has once acted upon the recommendation, as we shall hereafter show.

It is conceded that appellee is, through mesne conveyance under the deed of Francisco Martinez et ux to one Manzanares, of the date of June 21, 1871, successor in title of all title that *could* be conveyed, except insofar as any rights may have been previously conveyed to appellant's predecessors in interest. All of the common, but none of the allotted, lands are involved in this suit. Appellants contend that such deed conveyed only the 150 varas described, together with a *right* only in common with all others to use the common land.

Appellee claims that since Congress confirmed this grant to Francisco Martinez on June 21, 1860, his deed thereafter made to Manzanares actually conveyed a fee simple title to all the common lands in question.

Appellants rely upon more than one hundred documents made and executed by Francisco Martinez to their predecessors in title conveying particular tracts of 200 varas each, which said varas *remain* with the right of "pastures, woods, water, lumbers, watering places, and roads, common and free." Such deeds declare they are made as "free gift and transfers according to the Articles of the deeded grant." All of

these deeds upon which appellants rely were executed and recorded between the dates of 1861 and 1866. These deeds, say appellants, were made under and in view of the Colonization Laws of the Republic of Mexico, of which this territory of New Mexico was then, and until 1847, a part; and, that the grantor, Martinez, was endeavoring in all these conveyances to observe what he thought was a legal obligation enjoined upon him by the terms of the Mexican grant and the Mexican Laws of Colonization, to see that the Common and unallotted lands remain free for the common rights to water, timber, roads, etc.

A voluminous stipulation, covering all facts in the case and embracing over fifty pages of the transcript, was entered into by the parties. It is therein conceded that, in addition to the question of title by purchase and conveyance, appellee has perfect title to these common lands by adverse possession if, under the law, title by adverse possession could be relied upon as to such lands.

Appellee contends that in any event, it and its predecessors in title are not held to constructive notice of attempted prior conveyances of any of the said common lands by the said Francisco Martinez, because of the form and language of the several deeds, and because of the lack of statutory acknowledgements; it is stipulated that there was no *actual,* as distinguished from constructive, notice of appellants' claims. All deeds upon which appellant rely are substantially identical as to form and language employed in the alleged acknowledgement.

Appellants contend that they are entitled to rely upon the terms of the original Mexican Grant of 1832 and the rules and regulations of the Mexican Colonization Laws in force at the time, even if not in determining the character of title Francisco Martinez obtained, at least for the purpose of showing his intention, when, thereafter, he granted to appellants' predecessors in title the several tracts of land by the several deeds under which they here claim. The clear intention of the patentee, Martinez, who was grantor of the several tracts, appellants contend, was to reserve to all owners of allotted land within the grant, the free and undisturbed perpetual use of all the common and unallotted lands for the purpose of having for the common use, pasture, water, and road-ways "according to the custom existing in every settlement."

Whether such intention may be shown in this manner, or whether it can be shown at all under the language of the several deeds and the customs and surrounding circumstances, is one thing, and whether it would afford appellants any support for their position in any event, is another.

Appellee contends that appellants are not entitled to look beyond the congressional act of confirmation and the patent issued, to determine what kind of title passed to the grantee, Manuel Martinez; that adjudication of many like questions by the supreme court of the United States,

the United States Circuit Court of Appeals, and our territorial court, has settled the question that all "common" lands of private and community grants made under authority of the Kingdom of Spain or the Republic of Mexico, were reserved to the crown or governmental authority, and that when this domain passed to the United States under the Treaty of Guadalupe Hidalgo, 9 Stat. 922, that the terms of said Treaty and all customs observed, and provisions of Mexican Law as to the use and disposition of the common and unallotted lands, became subservient to the authority of the United States government, which properly chose its own manner and method of establishing, confirming and passing title to such lands. It cites many authorities in support of this view. Act of Congress, July 22, 1854, 10 Stat. 308; Act of Congress, June 21, 1860, 12 Stat. 71; Astiazaran v. Santa Rita Land & Mining Co., 148 U.S. 80, 13 S.Ct. 457, 37 L.Ed. 376; Botileer v. Dominguez, 130 U.S. 238, 9 S.Ct. 525, 32 L.Ed. 926; Catron v. Laughlin, 11 N.M. 604, 72 P. 26; Chavez v. Chavez de Sanchez, 7 N.M. 58, 32 P. 137; Reilly v. Shipman, 8 Cir., 266 F. 852; Tameling v. United States Freehold & Emigration Co., 93 U.S. 644, 23 L.Ed. 998; United States v. Maxwell Land-Grant Co. (on rehearing), 122 U.S. 365, 7 S.Ct. 1271, 30 L.Ed. 1211; Yeast v. Pru, D.C.N.M., 292 F. 598; Act of Congress, March 2, 1889, 25 Stat. 854; Bond v. Unknown Heirs of Barela, 16 N.M. 660, 120 P. 707, affirmed 229 U.S. 488, 33 S. Ct. 809, 57 L.Ed. 1292; Merrifield v. Buckner, 41 N.M. 442, 70 P.2d 896; Rio Arriba Land & Cattle Co. v. United States, 167 U.S. 298, 17 S.Ct. 875, 42 L.Ed. 175; United States v. Maxwell Land-Grant Co. et al., 121 U.S. 325, 7 S.Ct. 1015, 30 L.Ed. 949; United States v. Sandoval, 167 U.S. 278, 17 S.Ct. 868, 42 L.Ed. 168; United States v. Santa Fe, 165 U.S. 675, 17 S.Ct. 472, 41 L.Ed. 874; Board of Trustees v. Brown, 33 N.M. 398, 269 P. 51.

So, we come immediately to the important and decisive question in the case, viz., may the court inquire into the nature of this original grant by the Republic of Mexico, going behind the acts of congress which provided a method of establishing and settling title to such grants, and which confirm and grant such title? Another point relied upon by appellee, and to be hereinafter discussed, is that, even if this might be done, if we might go behind the act of confirmation, appellants have no standing in court to attack its title of purchase, since it had neither actual or constructive notice of other and prior claims, if any, and clearly title by adverse possession has been acquired.

We need not burden this opinion with much repetition of the history of the Treaty or of Spanish and Mexican land grant litigation. Enough of that will be found in a number of the foregoing cases, to serve all purposes of both the practitioner and the student.

It is appellants' contention that the Tierra Amarilla grant, as originally made, was a municipal or community grant from the Republic of Mexico; and, being made pri-

or to the Treaty of Guadalupe Hidalgo, that by virtue of such grant a trust was created in all the common or unallotted lands of such a nature that, although the legal title to the lands was retained by the government of Mexico, it held such title in trust only and for the use and benefit of the owners of the allotted lands. And, that under the said treaty, the legal title to those common lands passed to the United States likewise impressed with the same trust; and that although by confirmation of the grant and subsequent patent, this legal title passed to the appellee's predecessors in interest, such title was at all times and still is impressed with this trust.

So, the contention of appellants must of necessity be, that the courts will recognize, apply and enforce the terms of the grant and the Treaty of Guadalupe Hidalgo as applied to these lands; and, if the act of congress confirming the grant conflicts with or undertakes to ignore the provisions of the grant and the Treaty, the terms of the grant and the Treaty must prevail. This contention, however, finds no support in the adjudicated cases, either in the Supreme Court of the United States or in our own courts. Whether or not there is such a conflict in fact, we need not decide.

It was said in the case of Botileer v. Dominguez, 130 U.S. 238, 9 S.Ct. 525, 527, 32 L.Ed. 926, where the same contention was advanced: "With regard to the first of these propositions it may be said that so far as the act of congress is in conflict with the treaty with Mexico, that is a matter in which the court is bound to follow the statutory enactments of its own government. If the treaty was violated by this general statute, enacted for the purpose of ascertaining the validity of claims derived from the Mexican government, it was a matter of international concern, which the two states must determine by treaty, or by such other means as enables one state to enforce upon another the obligations of a treaty."

Our own territorial supreme court in the case of Chavez v. Chavez de Sanchez, 7 N. M. 58, 32 P. 137, 140, where it was sought to go behind the act of congress to show that title relied upon was perfect under the laws, usages and customs of Spain and Mexico prior to the Treaty of Cession of 1848, 9 Stat. 922, held that evidence upon this point was nevertheless irrelevant and incompetent. It was pointed out that the court had no jurisdiction to "determine the value of such titles, prior to the determination of them by the political department of the government, or some tribunal established by act of congress to hear and determine them."

It is clearly and fully established under the authority of this case and the cases therein relied upon, that until congress had passed on the validity of such land grant titles (either by act of confirmation, or by decree of a special tribunal created by it for that purpose) the courts are without jurisdiction to consider such a grant; and that after congress had so acted its action was conclusive and binding on the court. That is to say, in neither case could the courts themselves pass on the meaning, ef-

fect or validity of the grant itself being limited to a determination simply of the meaning of the act of congress confirming the grant. See Tameling v. United States Freehold & Emigration Co., 93 U.S. 644, 662, 23 L.Ed. 998, where it is pointed out that the modes of determining the land claims of Spanish or Mexican origin were radically different where they embraced lands in California. There a procedure essentially judicial in character was provided with the right of ultimate appeal to the United States Supreme Court, it was noted, while in New Mexico no such jurisdiction was conferred upon the courts; but that here, the surveyor-general, in the exercise of the authority with which he was invested, decides them in the first instance, while the final action on each claim reserved to congress, "is, of course, conclusive, and therefore not subject to review in this or any other forum. It is obviously not the duty of this court to sit in judgment upon either the recital of matters of fact by the surveyor-general, or his decision declaring the validity of the grant. They are embodied in his report, which was laid before Congress for its consideration and action. * * * In Ryan et al. v. Carter et al., supra [93 U.S.] p. 78 [23 L.Ed. 807], we recognized and enforced, as the settled doctrine of this court, that such an act passes the title of the United States as effectually as if it contained in terms a grant de novo, and that a grant may be made by law as well as by a patent pursuant to law."

This decision was followed by that in the Maxwell Land-Grant case, 121 U.S. 325, 7 S.Ct. 1015, 30 L.Ed. 949, which grant was also confirmed by the same act of congress. In this case the court again refused to go behind the act of confirmation upon an attack where the United States sought to cancel or reform the patent theretofore issued, on the theory that congress had acted under a mistake as to area properly to be included and where it was contended that the patent should therefore be reformed or be set aside. The Tameling case, supra, was here approved and followed notwithstanding a vigorous challenge that it was distinguishable. The court here, after elaborate discussion, held that it was wholly concluded by the act of congress. It was pointed out that, under the Constitution, congress has power to dispose of and make all needful rules and regulations respecting the territory or other property, belonging to the United States. Article IV, Sec. 3.

The question of the finality and conclusive character of the act of congress in confirming such land grants was again before the United States Supreme Court in Astiazaran v. Santa Rita Land and Mining Co., 148 U.S. 80, 13 S.Ct. 457, 37 L.Ed. 376, where there was summed up the earlier decisions upon the question, and where it was again held that the decision of congress is final and conclusive and no jurisdiction to inquire beyond that is conferred upon the courts.

This question was considered again by our territorial supreme court in the case of Catron v. Laughlin, 11 N.M. 604, 72 P. 26, 29, which involved title to the Eaton

grant. There, in an elaborately reasoned opinion the same rule was adhered to, and our territorial court said: "But that the grant made by the Mexican government was in itself, unaided by the sanction of Congress, a valid grant of all the land within the boundaries specified in the act of juridical possession, we need not and do not assert. The courts of justice are concluded by the action of the political department, and, the political department of the government having acted upon this grant, that action must be regarded as a complete adjudication of the law as affecting this grant."

The question of whether the grant was to an individual or to a community is but a variation of the question of the identity of the grantees. This question was passed upon in the Catron case, supra, adversely to appellants' contention. This question of identity of grantee was again presented where the Anton Chico grant was involved, in the case of Reilly v. Shipman, 8 Cir., 266 F. 852. The grant in this case was confirmed by congress as recommended by the surveyor-general, as a community grant. The court here cited with approval language used in the Tameling case, supra, where it is stated: "The final action on each claim reserved to Congress, is, of course, conclusive, and therefore not subject to review in this or any other forum."

For a like determination of the same question, see Yeast v. Pru, D.C.N.M., 292 F. 598. The courts have uniformly held to the theory that they are concluded by the act of congress in confirming such grants, and cannot go behind them.

Therefore, if the title which passed to Francisco Martinez, upon confirmation by Congress, was a complete title unfettered by any trust, then, unless the language and form of the deeds relied upon by appellants were sufficient to convey title and were entitled to record and thus would give notice, appellee must be held to have title under the deeds and chain of title upon which it relies, though the first deed in the chain is subsequent in time to the first deed in appellant's chain of title. So, this point we are now asked to consider, turns upon the question of the sufficiency of the deeds as to form and substance to convey title.

Appellee contends that the deed is lacking in the essentials of, (a) apt words of conveyance; (b) sufficient description to identify the common lands; and (c) insufficient acknowledgment of the grantor to entitle the deeds to record.

This point, though intriguing in its ramifications and by its vigorous challenge to appellee's title, we need not and do not decide. Another question, which is whether appellee has not acquired title by adverse possession, in any event, also presented and relied upon, is decisive, and it would serve no useful purpose to discuss further or pass upon such other point.

It is admitted by stipulation that appellee together with its predecessors in title, for the requisite period preceding the commencement of the suit, had done every act and thing involving the title and possession

of the land described in the complaint, to constitute adverse possession under either of our statutes appertaining thereto. Sec. 83-119, or 83-122 of the N.M.Stat.Ann. Comp.1929.

It is further conceded that appellee and its predecessors in title had, for more than ten years next preceding the 16th day of March, 1899, done every act and thing required of one to acquire title to the lands by adverse possession under the adverse possession statute, Sec. 83-122, supra, as this statute existed prior to its amendment on March 16, 1899, c. 63. Appellants' sole defense to this title, upon which appellee relies, is that the lands were not subject to title acquisition by adverse possession. But, appellants' contention is not sound.

■ Even though this grant could under any circumstances be held to be a community grant in its inception under the original Mexican grant, the title to the common lands was never in the settlers, but in the Mexican government, and this passed to the United States by the Treaty. This is established by the cases hereinbefore referred to. Therefore, such title to the common lands having passed to the United States by the Treaty, likewise passed from the United States to Francisco Martinez by the confirmatory act of Congress and the patent issued in pursuance thereof. And such title passed, of course, free of any trust in favor of anyone, if in fact the trust relationship ever existed.

■ The question then is: Can title by adverse possession be acquired as to common lands of a community grant? We hold that it can be. In Kavanaugh v. Delgado, 35 N.M. 141, 290 P. 798, 799, we held the "Tecolote land grant is not a municipal corporation in the sense that it constitutes an instrumentality or agency of the state."

This case is relied upon by appellants in support of their view, but it does not bear the appraisal they contend for.

We have held that lands of a community grant are subject to taxation. State v. Board of Trustees of Town of Las Vegas, 28 N.M. 237, 210 P. 101; Board of Trustees v. Sedillo, 28 N.M. 53, 210 P. 102; Board of Trustees of Town of Torreon v. Garcia, 32 N.M. 124, 252 P. 478. This court has considered rights acquired by adverse possession to lands within community grants without any question being raised as to the applicability of the New Mexico statutes with respect to such adverse possession of such lands. First National Bank of Albuquerque v. Town of Tome, 23 N. M. 255, 167 P. 733; Merrifield v. Buckner, 41 N.M. 442, 70 P.2d 896; Pueblo of Nambe v. Romero, 10 N.M. 58, 61 P. 122. See also Garcia v. United States, 10 Cir., 43 F.2d 873.

Obviously title to these common and unallotted lands may be so acquired, present all the circumstances essential, which is here conceded. Therefore, even if this could be considered as originally a community grant in spite of the declaration and determination of Congress to the contrary, nevertheless appellee has established his title by adverse possession.

So, if this were a private grant, the act of confirmation merely carried out the treaty obligation; if it were a community grant, the common lands were merely government domain and the confirmation constituted a grant de novo to the grantee, Francisco Martinez. Under either view the absolute title was vested, by the act of confirmation in the said grantee.

The judgment will be affirmed, and it is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and SADLER, JJ., concur.