**Jacob SANCHEZ et al., Appellants,**

v.

**J. T. TAYLOR, Jr., Appellee.**

**No. 8600.**

United States Court of Appeals
Tenth Circuit.

May 17, 1967.

Rehearing Denied June 23, 1967.

---

734

Eugene H. Tepley, Denver, Colo., for appellant.

V. G. Seavy, Jr., of Zarlengo, Zarlengo, Seavy & Mulligan, Denver, Colo., for appellees.

Before PICKETT and SETH, Circuit Judges, and STANLEY, District Judge.

PICKETT, Circuit Judge.

In 1960, alleging that he was the owner of 77,524 acres of land in Costillo County, Colorado, appellee J. T. Taylor, Jr., a citizen of North Carolina, made application in the United States District Court for the District of Colorado for registration thereof under the Colorado Torrens Title Registration Act, 1953 C.R.S. 118–10–1 et seq. Named as defendants were several hundred persons comprising the entire adult population of the area immediately to the west of the land here involved. The land sought to be registered, as well as the land inhabited by the defendants, was part of an 1844 Mexican land grant which was later ratified by the Congress of the United States.

In their answer, defendants claimed unlimited equitable rights upon this land with respect to grazing cattle, taking timber, hunting, fishing, water, and recreational uses. These claims are based essentially upon (1) grant or dedication, and (2) prescription or adverse possession. The issues were fully set forth after two pre-trial conferences. A default judgment was entered against 369 named defendants for failure to respond to interrogatories. Issues were joined as to 112 defendants. Thereafter Taylor filed a motion for summary judgment which was sustained in part and denied in part. It was held that the defendants had no rights in common in the land by reason of grant or dedication, and that de-

fendants acquired no prescriptive rights by reason of common use as inhabitants. As to individual claims premised upon prescription or adverse possession, however, the court determined that a material issue of fact existed, and trial was had to the court on this issue. The court concluded that none of the remaining defendants had any right to the land by reason of individual prescription or adverse possession. Following the final report of the Examiner of Titles for Costilla County certifying fee simple title in Taylor, the court entered a final decree of confirmation of title and registration, making final its order of summary judgment and its findings, conclusions, and judgment subsequent to the trial.

On January 12, 1844, a parcel of land in New Mexico, consisting of approximately 1,000,000 acres, was granted by the Mexican government to Luis Lee and Narciso Beaubien. This is known as the "Sangre de Cristo Grant", and it includes not only the land owned by Taylor, which is commonly referred to as the "Mountain Tract", but also the area to the west where the defendants reside. In 1847 Narciso Beaubien and Luis Lee were killed at the Massacre of Taos. Narciso's father, Carlos (Charles) Beaubien, inherited Narciso's undivided one-half interest in the grant and thereafter purchased the remaining undivided half from the estate of Luis Lee.

In 1848, by the terms of the Treaty of Guadalupe-Hidalgo, Mexico ceded to the United States large areas of land which included the Sangre de Cristo Grant. The treaty provided that Mexican property rights in the lands ceded "shall be inviolably respected." 9 Stat. 922, 929. On June 21, 1860, following recommenda-

tion of the United States Surveyor-General, Congress confirmed in Carlos Beaubien ownership of the Sangre de Cristo Grant, 12 Stat. 71, and a patent issued in 1880.

Meanwhile, beginning in 1852, Beaubien had attracted a number of settlers ("pobladores") to the grant. Numerous parcels of land were thus sold and conveyed. On May 11, 1863, Beaubien executed and thereafter recorded a document setting forth certain regulations and privileges respecting these settlers.[1] Prior to his death in 1863, Beaubien entered into an oral agreement with William Gilpin concerning sale of the remainder of the grant. After his death, Beaubien's heirs conveyed the remainder of the grant to Gilpin. As part of this transaction, Gilpin executed and recorded an instrument whereby he agreed to recognize and confirm certain "settlement rights" theretofore conceded by Beaubien. Attached to this contract was a list of settlers entitled to conveyance of purchased land upon payment of the amounts due. All money notes in writing and other obligations were transferred to Gilpin. Gilpin and his successors in title continued over the years to sell and dispose of portions of the grant, and most of the lands of the grant, other than the Mountain Tract, have been segregated and fenced. This 77,524 acre tract, which Taylor purchased in 1960, remains the only unfenced portion of the grant of any significance.

It is first asserted by appellants that the United States District Court was without jurisdiction to entertain this case for lack of the existence of a federal question. The pre-trial order dated August 24, 1961 recites that federal

[1]. This instument provided in part:
"It has been ordered (decreed) that the lands of the Rito Seco remain uncultivated for the benefit of the people of the town of San Luis, San Pablo and Los Ballejos and the other inhabitants of these towns, for the purpose of engress and pasture, etc. and that the water of said creek shall be apportioned between the inhabitants of the said town of San Luis and those on the other side of the

vega who have lands adjoining and close to the said vega, since said lands are not irrigated with the waters of the Culebra River." * * *
"All the inhabitants shall have the right, with convenient arrangement, to enjoy the benefits of the grazing lands, water, wood and timber, always being careful not to be prejudice. with one another."

jurisdiction "is admitted on the basis of diversity of citizenship and jurisdictional amount." It is clear, therefore, that jurisdiction here is based upon 28 U.S.C. § 1332, and the court entered specific findings of fact and conclusions of law in this regard:

28 U.S.C. § 1332 provides in part:

"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different states;
* * * "

This proceeding is essentially in the nature of an action to quiet title. No monetary relief is sought; what is sought, rather, is that the court "declare the title or interest of applicant, and order the Registrar of Titles to register the same." In such proceeding the amount in controversy is the value of the realty directly affected. A. C. McKoy, Inc. v. Schonwald, 10 Cir., 341 F.2d 737; Ronzio v. Denver & R. G. W. R. Co., 10 Cir., 116 F.2d 604; Jones v. Box Elder County, 10 Cir., 52 F.2d 340, cert. denied 285 U.S. 555, 52 S.Ct. 456, 76 L.Ed. 944; Peterson v. Sucro, 4 Cir., 93 F.2d 878, 114 A.L.R. 890. It cannot seriously be contended that requisite jurisdictional amount does not exist respecting this 77,524 acre tract of land for which Taylor paid $497,700.93. As to diversity, the record discloses that when this action was commenced in 1960, Taylor was residing, working, paying taxes, and voting in North Carolina. Since all defendants are citizens of Colorado, the requisite diversity of citizenship is present.

The Colorado Torrens Title Registration Act, under which this proceeding was brought, provides that "The application for registration shall be made to the district court of the county wherein the land is situated." 1953 C.R.S. 118–10–8. In Erwin v. Barrow, 10 Cir., 217 F.2d 522, this court held that federal jurisdiction was not excluded by a state statute requiring that suits to set aside conveyances of real estate be brought in the county where the land is located. See also, Madisonville Traction Co. v. Saint Bernard Mining Co., 196 U.S. 239, 25 S.Ct. 251, 49 L.Ed. 462; Holt v. King, 10 Cir., 250 F.2d 671. This rule is applicable here.

Appellants complain that the court erred in granting any part of Taylor's motion for summary judgment. The court's summary judgment order concluded:

"IT IS THEREFORE ADJUDGED that the defendants have no rights of any kind or nature in and to the lands. here involved, by virtue of Mexican law or by virtue of a grant or dedication by Carlos Beaubien and William Gilpin or either of them; or by virtue of the uses of plaintiff's land by the inhabitants in common of the areas in which the defendants reside."

The pre-trial order dated May 25, 1962 set forth the following issues:

"A. Was the grant of the land herein involved by the Mexican Government burdened with a servitude in favor of any person or group of persons other than the grantee?

* * * * * *

C. If it was so burdened, did the servitude survive to burden the lands in the hands of subsequent purchasers?"

For purposes of the motion for summary judgment, it was admitted by Taylor that under Mexican law the settlers had certain rights in common on the lands of the grant, such as grazing and wood. The court determined that these rights under Mexican law did not survive the acquisition of the lands by the United States and the congressional confirmation of title to the Sangre de Cristo Grant in Beaubien.

■ The Treaty of Guadalupe-Hidalgo provided that property rights under Mexican law would be respected. In 1854 Congress established the Office of Surveyor-General to ascertain the nature and validity of any such claims respecting the land ceded to the United States under the

treaty. 10 Stat. 308. Upon the recommendation of the Surveyor-General, the entire Sangre de Cristo Grant was approved and confirmed in Beaubien by Act of Congress in 1860, 12 Stat. 71, and a patent issued in 1880. Beginning with Tameling v. United States Freehold, Etc. Co., 93 U.S. 644, 23 L.Ed. 998,[2] the Supreme Court has consistently held that the confirmatory Act of Congress is final and conclusive as to the nature and validity of such a grant and is therefore not subject to judicial review. See, Astiazaran v. Santa Rita Land & Mining Co., 148 U.S. 80, 13 S.Ct. 457, 37 L.Ed. 376; Maxwell Land-Grant Case, 121 U.S. 325, 7 S.Ct. 1015, 30 L.Ed. 949, on rehearing 122 U.S. 365, 7 S.Ct. 1271, 30 L.Ed. 1211. This court too has so held. Martinez v. Rivera, 10 Cir., 196 F.2d 192, cert. denied 344 U.S. 828, 73 S.Ct. 30, 97 L.Ed. 644; Flores v. Bruesselbach, 10 Cir., 149 F.2d 616. See also, H. N. D. Land Co. v. Suazo, 44 N.M. 547, 105 P.2d 744. We find no error in the trial court's conclusion that appellants, as a matter of law, have no rights in Taylor's land under Mexican law or the original grant. Any conflicting rights prior to the confirmatory Act of 1860 which might have arisen or existed by reason of the original grant from Mexico, considered in the light of Mexican law and the Treaty of Guadalupe-Hidalgo, were thereby extinguished.[3]

Appellants point out that the 1860 confirmatory act provides " * * * That the foregoing confirmation shall only be construed as quitclaims or relinquishments, on the part of the United States, and shall not affect the adverse rights of any other person or persons whomso-

ever." 12 Stat. 71. The 1880 patent also recites this condition. The original grant conferred no rights in any persons other than the grantees, Luis Lee and Narciso Beaubien, but even if under Mexican law or the terms of the grant certain settlement rights which conflicted with the congressional confirmation had been given to third persons prior to the treaty, the quit-claim clause would nevertheless be of no avail to appellants, because title had passed to the United States. If the confirmation of the title was contrary to treaty provisions, the question was political, not judicial. H. N. D. Land Co. v. Suazo, supra, and cases discussed therein. See also, Barker v. Harvey, 181 U.S. 481, 21 S.Ct. 690, 45 L.Ed. 963.

Appellants next contend that the Beaubien document of May 11, 1863, together with the agreement of April 7, 1964 between Gilpin and the executors of Beaubien's estate constitute a grant or dedication of the Mountain Tract, confirmed by Gilpin, of certain equitable uses to the settlers of the area. It is urged that the court erred in concluding that no such grant or dedication was shown.

The Beaubien instrument makes specific reference only to the lands of the Rito Seco and the vega. No mention is made of the Mountain Tract. Admittedly, the Rito Seco and the vega are not part of the lands involved here. Following the reference to the Rito Seco and the vega, the instrument provides that "All the inhabitants shall have the right, with convenient arrangement, to enjoy the benefits of the grazing lands, water, wood and timber, always being careful not to be prejudice with one another." There are

---

2. Tameling v. United States Freehold, Etc. Co., 93 U.S. 644, 23 L.Ed. 998, reviewed a decision of the Supreme Court of the Territory of Colorado involving the extent of the Sangre de Cristo Grant. The material documents and proceedings from the origin of the grant to and including the report of the Surveyor-General are included in the report of this case.

3. Appellants remind us that the area became part of the United States in 1848 and that the earliest settlers came in

1852; therefore, it is argued, their rights could not have begun until after the territory was part of the United States. They complain that the Mexican law should have been resorted to only as an interpretive factor in understanding the meaning of "settlement rights" allegedly granted by Beaubien in 1863 and reaffirmed by Gilpin in 1864. These instruments, which form the basis of appellants' claim of grant or dedication, were fully discussed by the trial court in its order of summary judgment.

no words of conveyance, grant or dedication, except the reference to the Rito Seco and the vega. The trial court concluded that if this provision were not limited to the Rito Seco and the vega, it must then apply to all the lands of the grant, which, the court reasoned, would be inconsistent with the obvious intent of Beaubien. While it may have been possible to make a valid dedication of the privileges claimed here, such dedication can be established only when the purpose and intent of the grantor are clearly manifested. Starr v. People, 17 Colo. 458, 30 P. 64; F. A. Hihn v. City of Santa Cruz, 170 Cal. 436, 150 P. 62. Cf. McIntyre v. Board of Comm'rs, 15 Colo.App. 78, 61 P. 237. We agree with the trial court that to construe the instrument as a dedication of the lands to the extent claimed by the appellants would be inconsistent with the contemplated sale of the lands remaining unsold at the time, and to apply it only to the Mountain Tract would require a rewriting of the instrument. None of the settlers, including these defendants, have ever, and do not now, assert any privileges for the use of lands after sale and occupancy by the purchasers. Apparently the conflict arose when the sale to Taylor ended the free use of the lands in the area for pasture, wood, and recreational uses. The hardship caused, however, does not establish a legal right.

By the terms of the agreement between Gilpin and the executors of Beaubien's estate, Gilpin undertook to carry out certain commitments which Beaubien had made to settlers during his lifetime. Essentially, this is a commitment to convey title to certain settlers upon receipt of agreed payments. There is no language in the agreement which could be construed as indicating that either Beaubien or Gilpin intended the dedication which appellants seek to establish.

■ In the final portion of the summary judgment, the court determined that the appellants, as inhabitants of the area, have no prescriptive rights in common to the Mountain Tract. It is apparent that from the earliest time of settlement the settlers were accustomed to use the unfenced and uncultivated lands of the grant, but this use was diminished as portions were sold and fenced. We agree with the trial court that such usage in common by the inhabitants of the area did not vest in them or the general public such rights as are claimed. It is settled that the public cannot acquire by custom or common prescription profits a prendre in another's land. The leading American case on this subject appears to be Pearsall v. Post, 20 Wend. (N.Y.) 111. See also, Millspaugh v. Northern Indiana Public Service Co., 104 Ind.App. 540, 12 N.E.2d 396; Bosworth v. Nelson, 170 Ga. 279, 152 S.E. 575; Albright v. Cortright, 64 N.J.L. 330, 45 A. 634, 48 L.A. 616; Turner v. Selectmen of Hebron, 61 Conn. 175, 22 A. 951, 14 L.R.A. 386; Gray, The Rule Against Perpetuities § 584, and footnote cases cited therein.

Upon trial of the issue of individual rights claimed to have been acquired by prescriptive use, a number of defendants testified, and a stipulation was made as to what the testimony of the remaining defendants would be if they should be called as witnesses. It was held that each of the defendants had acquired no rights individually to the Mountain Tract by prescription, adverse possession, or otherwise.

■ The evidence developed that from the earliest time of settlement the inhabitants of the grant periodically used the unfenced areas of the grant for pasturing, wood, and recreation. Some testified that they used the land for grazing and other purposes without restriction. Others said that they attempted to limit the number of livestock grazing within the area. Apparently under a claim of right, this practice was continued over the years with respect to the Mountain Tract while it remained unfenced. The evidence is clear that these claims and uses have been in no way exclusive, as others were making similar claims and uses respecting this land. In

Segelke v. Atkins, 144 Colo. 558, 357 P.2d 636, 637, the court stated:

"It is fundamental that to prove adverse possession of real estate it must be shown that the possession was actual, adverse, hostile and under claim of right. It must be open, notorious, exclusive and continuous for the statutory period. Loshbaugh v. Benzel, 133 Colo. 49, 291 P.2d 1064; Haymaker v. Windsor Reservoir & Canal Co., 81 Colo. 168, 254 P. 768."

And in Lovejoy v. School Dist. No. 46, of Sedgwick County, 129 Colo. 306, 269 P.2d 1067, 1069, it was stated: "The very essence of adverse possession is that the possession must be hostile, not only against the true owner, but against the world as well." In Martinez v. Mundy, 61 N.M. 87, 295 P.2d 209, 214, where similar profits were claimed in lands which also were part of a Mexican land grant, the court stated:

"The claim by the appellants that they have acquired by grant or prescription, the right to cut wood, water livestock, pasturage and the use of roads was not shown to have been exclusive to the appellants but on the contrary was claimed by many others. The claim being in common with and similar to that of the general public in this area, the appellants certainly could not acquire a private easement unto themselves. All circumstances must be considered in determining the acts that would lead to a prescriptive right and we do not find such acts present in such force as to refer to a prescription."

See also, Linn County v. Rozelle, 177 Or. 245, 162 P.2d 150, 170; White v. Harris, 206 Ill. 584, 69 N.E. 519; 2 C.J.S. Adverse Possession § 49. Furthermore, it is generally held that the use of land for pasturage, natural products, and timber does not ordinarily constitute adverse possession. In Smith v. Town of Fowler, 138 Colo. 359, 333 P.2d 1034, 1038, it was said: "The pasturage of cattle on unfenced lands cannot be regarded as hostile and adverse to the owner of such land."

See also, 2 C.J.S. Adverse Possession §§. 29, 30, 31.

 Appellants' claim here embraces those very uses for which the disputed land is best adapted. Their claims appear tantamount to an assertion of unlimited equitable ownership. Cf. Deseret Livestock Co. v. Sharp, 123 Utah 353, 259 P. 2d 607; Merwin v. Wheeler, 41 Conn. 14. Such would be plainly inconsistent with the title in fee simple which has been certified in Taylor.

Other assignments of error have been considered and found to be without merit.

Affirmed.